Maurice GROSS, as brother and next
friend of James Spears,
Appellant,

v.

DISTRICT OF COLUMBIA,
et al., Appellees.

No. 97–CV–1309.

District of Columbia Court of Appeals.

Argued Jan. 14, 1999.
Decided July 29, 1999.

Samuel M. Shapiro, with whom David C. Merkin, Rockville, MD, was on the brief, for appellant.

Edward E. Schwab, Assistant Corporation Counsel, with whom Jo Ann Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellees.

Before TERRY and STEADMAN, Associate Judges, and KING, Senior Judge.

STEADMAN, Associate Judge:

Maurice Gross, as "brother and next friend of James Spears,"[1] brought suit against the District of Columbia and unidentified Metropolitan Police Department

---

[1] James Spears was alleged to have been non compos mentis from the time of the incident. For convenience, we refer to appellant as "Gross" throughout the opinion.

(MPD) officers for common law and constitutional torts stemming from an alleged incident of police brutality against Spears at a bar near Howard University. The trial court granted the District's motion to dismiss or for summary judgment.[2]

The principal issues on appeal are (1) whether the failure to timely file the notice required by D.C.Code § 12–309 (1995) is excused by Spears' alleged non compos mentis condition, and (2) whether Gross' proffered evidence to establish "deliberate indifference" by the District in training and supervision of its police officers was sufficient to survive summary judgment on a claim under 42 U.S.C. § 1983 (1994 & Supp. II 1996).

We affirm the grant of summary judgment regarding the claims against the District. We also uphold dismissal, but without prejudice, of the claims against the unidentified police officers.

## I. Allegations and Proceedings

Gross' version of events was as follows. On February 16, 1993, James Spears was at a club called the Basement near Howard University, dancing on stage and singing with the band. Earlier in the evening Spears had smoked marijuana twice. He bumped into an off-duty police officer serving as a bouncer. The officer told him to get off stage and he did. He later went back on stage to dance. Approximately ten police officers entered the club to start breaking up the party and told him to get off the stage, and he complied. The police officers surrounded him and said he was going downtown. Spears pushed an officer's hands off of him, and one officer pulled a gun and held it in his face. Spears knocked the gun away. He was then beaten up by the officers in the club

and taken outside. There he was slammed on the concrete ground, his face was stomped on, and he was beaten some more. An officer put a billy club around his neck and tried to choke him. He was then thrown in a police van, made to throw up, and his head was pushed into his own vomit, nearly suffocating him. He was later taken out of the van and put on a stretcher and taken to D.C. General Hospital. Subsequently he was taken to St. Elizabeths Hospital and then released.[3] No charges were ever filed against Spears.

At the time of the events, Spears was a Howard University junior. Spears' affidavit indicates that he remained at Howard through the spring of 1994. Spears also held jobs at Blue Cross/Blue Shield in 1994–1995 but was then placed on leave for mental health reasons. Subsequently Spears had various mental health problems and was arrested for assault and found not guilty by reason of insanity in Michigan. He was housed in a Michigan state mental hospital in 1996.

On February 16, 1996, Gross filed suit against unnamed District police officers and, in addition, the District on the theory of respondeat superior liability, alleging common law torts for negligence, assault and battery (excessive use of force), and false arrest. Gross also sought damages for violation of Spears' civil rights under 42 U.S.C. § 1983 from the officers and, in addition, from the District based on an alleged municipal custom or policy that led to the alleged violations by the unnamed police officers. On this same date, plaintiff's counsel sent notice of this action to the Mayor of the District. The officers involved in the incident have never been identified nor served with the summons and complaint.

2. The District submitted a model order that "the motion of Defendant District of Columbia to dismiss the complaint/for summary judgment, be ... granted ...." The trial court signed this order, crossing out the words "for summary judgment." As discussed *infra*, because the trial court was presented with matters outside the pleadings with respect to the claims against the District,

we treat the trial court's order as granting summary judgment in part (with regard to the claims against the District) and dismissing in part (with regard to the claims against the unknown officers).

3. The District has no record of the alleged incident, nor have any hospital records been produced.

The District moved to dismiss or alternatively for summary judgment.[4] With respect to the common law claims, the District's motion to dismiss asserted that Gross failed to provide the notice required by D.C.Code § 12–309 and, in addition, raised the defense of statute of limitations. With respect to the claim of municipal liability under 42 U.S.C. § 1983, the District asserted that Gross failed to allege facts sufficient to establish a District custom or policy that caused the constitutional violations alleged and that it could not be held liable under a theory of *respondeat superior.* In support of its motion, the District presented the affidavit of Police Chief Thomas regarding Metropolitan Police Department (MPD) training and policies, District and Congressional standards regarding use of excessive force, and the creation and existence of the Civilian Complaint Review Board (CCRB).

Gross filed an opposition to the motion, along with supporting exhibits, and asked the court to treat the motion as one for summary judgment and to consider all the information and affidavits. The supporting exhibits included unsigned affidavits of Ugo, a band member at the club the night of the incident, and a doctor friend with whom Spears stayed after the alleged incident. Gross also supplied the March 17, 1997 affidavit of Dr. Baxter, Spears' treating psychiatrist in Michigan, stating that Spears was non compos mentis from the time of the alleged incident. An affidavit from Robert W. Klotz,[5] appellant's police expert, stated that the unnamed officers violated the Fourth Amendment and that their violations were caused by deficiencies in the District's police training program. Klotz based his opinion on the following:

Spears' answers to interrogatories, a conversation with Ugo, two Supreme Court cases, police assault/false arrest cases for the years 1987–1991, and his involvement in over 30 cases in the prior five years. He concluded that there were the following problem areas in the MPD: (1) officers were not receiving in-service refresher training; (2) there had been no periodic evaluation of officers since 1986; (3) the CCRB was inefficient and ineffective in that it had huge backlogs and officers knew that they would seldom be disciplined; and (4) problems with training were indicated by a GAO report and Chief Thomas' admitted plan to overhaul training.

The trial court granted the District's motion to dismiss or for summary judgment, crossing out the words "summary judgment" on the form that was submitted by the District. Although the order references only defendant District of Columbia, the parties agreed at oral argument that the order should be interpreted as applying not only to the District but also to all the unknown police officers.[6]

## II. Summary Judgment for the District

As a preliminary matter, Gross asserts that the trial court's order should be reviewed as a dismissal in favor of the District under Rule 12(b)(6), and that his complaint clearly was not subject to dismissal on that basis. However, the District's motion to dismiss or for summary judgment presented substantial evidence beyond the pleadings, and both the District and Gross filed extensive exhibits and affidavits. The trial court thus was required to treat the motion to dismiss as a motion for summary judgment.[7] Super

4. As we understand it, the District was only representing itself, not the unidentified police officers.

5. Mr. Klotz is a former Deputy Chief of Police of the Washington, D.C. Metropolitan Police.

6. Therefore, the grant of the motion constitutes a final, appealable order. Without a dismissal as to the police officers, the appeal

would be premature and not properly before us. *See Cunningham v. District of Columbia,* 584 A.2d 573, 574 n. 2 (D.C.1990); *Moradi v. Protas, Kay, Spivok & Protas, Chartered,* 494 A.2d 1329, 1332 n. 6 (D.C.1985).

7. Nowhere did the trial court explicitly exclude the matters outside the pleadings presented by both sides, and we do not think the mere striking of the phrase "summary judg-

Ct. Civ. R. 12(b) states in pertinent part (emphasis added):

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*See, e.g., Kitt v. Pathmakers, Inc.,* 672 A.2d 76, 79 (D.C.1996) (citing *American Ins. Co. v. Smith,* 472 A.2d 872, 873–74 (D.C.1984)); *Fulwood v. Porter,* 639 A.2d 594, 598 (D.C.1994). Gross makes no claim that he did not have a sufficient opportunity to respond to the District's motion and to present all material pertinent to such motion. As we have often said, on appeals from the grant of summary judgment, "[t]his court conducts an independent review of the record, but the substantive standard is the same as that utilized by the trial court." *Millstein v. Henske,* 722 A.2d 850, 853 n. 7 (D.C.1999) (internal quotation marks and citation omitted). Accordingly, we turn our attention to the merits of the District's motion.

### A. Common law tort claims against the District

Local law claims against the District are barred if the plaintiff fails to comply with D.C.Code § 12–309. That section requires a plaintiff suing the District to file a written notice-of-claim with the Mayor within six months of the alleged injury.[8] In this case, the alleged injury occurred on or about February 16, 1993, and Gross notified the District of the decision to file suit on February 16, 1996, thirty-six months later.

First, Gross argues that the statutory period should be tolled because James Spears has been non compos mentis since the time of the incident. Controlling case law dictates otherwise. " 'Because it is in derogation of the common law principle of sovereign immunity, section 12–309 is to be construed narrowly against claimants.' " *Doe by Fein v. District of Columbia,* 697 A.2d 23, 29 (D.C.1997) (quoting *District of Columbia v. Dunmore,* 662 A.2d 1356, 1359 (D.C.1995)). This section does not function as a statute of limitations; rather, its function is to "impose[ ] a notice requirement on everyone with a tort claim against the District of Columbia, and compliance with its terms is mandatory as a prerequisite for filing suit against the District." *Dunmore,* 662 A.2d at 1358 (internal quotation marks and citations omitted). *See also Gwinn v. District of Columbia,* 434 A.2d 1376, 1378 (D.C.1981) ("Section 12–309 was ... specifically designed to avoid, as applied to the District, the pitfalls of the statute of limitations."). Our cases make clear that tolling principles applicable to statutes of limitations do not apply in § 12–309 cases. *See Doe by Fein,* 697 A.2d at 29 (statute not tolled by minority status: "The statute contains no exception to the time limit.... We hold that the statute does not permit equitable tolling."); *Dunmore, supra,* 662 A.2d at 1359–60 (discovery rule not applicable to § 12–309); *Gwinn,* 434 A.2d at 1378–79 (statute not tolled by minority status). Plaintiff's argument that the six-month time limit of § 12–309 should be tolled because Spears was non compos mentis is indistinguishable from the arguments for tolling that have been raised and rejected by this court in the past.[9]

---

ment" can be considered sufficient to do so in the circumstances here.

8. D.C.Code § 12–309 provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

9. Gross argues that at the least, § 12–309 does not apply with regard to his claims

■ Second, Gross argues that, with respect to § 12–309's notice requirement, a police report may serve as an alternative to written notice, see *supra* note 8, and baldly asserts that there "must" be written police reports about this incident which have not been turned over by the District. The District asserts, as it did to the trial court, that no police reports relating to the alleged arrest or assault could be located.[10] Section 12–309 places a requirement on the plaintiff to show compliance with its provisions, a " 'prerequisite' " to the filing of a suit against the District. *Dunmore, supra,* 662 A.2d at 1358 (citation omitted). *See also Gwinn, supra,* 434 A.2d at 1378 ("[U]nless timely notice is given, no 'right of action' or 'entitlement to maintain action' accrues."). If Gross thought that additional time for discovery was necessary to try to locate any such police reports, it was his duty to clearly alert the trial court to this need in opposition to the summary judgment motion. *See* Super. Ct. Civ. R. 56(f).[11] In any event, his complaint on appeal about any discovery inadequacy comes too late. It was raised for the first time in appellant's reply brief, not with the trial court or in the opening brief; therefore, we do not consider it further. *See, e.g., District of Columbia v. Patterson,* 667 A.2d 1338, 1346 n. 18 (D.C.1995), *cert. denied,* 519 U.S. 1058, 117 S.Ct. 688, 136 L.Ed.2d 612 (1997).[12]

### B. Section 1983 claim against the District

■ In addition to his common-law causes of action, Gross brought a 42 U.S.C. § 1983 claim against the District based on municipal liability for the unnamed officers' alleged actions of arresting Spears without probable cause and with excessive force.[13] Although a municipality is a "person" subject to suit within the meaning of section 1983, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To establish municipal liability under section 1983, a plaintiff must prove that "*deliberate* action attributable to the municipality

against the individual District employees. *But see Doe by Fein, supra,* 697 A.2d at 25. We need make no definitive ruling at this point because, as indicated *infra,* we conclude that the case against the unnamed officers was properly dismissed without prejudice under Rule 4(m). In the event the issue becomes relevant in any further proceedings, it can be addressed then.

10. See *supra,* note 3. Also, even if there was a written police report about the incident, such a report would not be an adequate substitute for the written notice requirement unless it included all the elements required in any other notice given under the statute. *See, e.g., Doe by Fein, supra,* 697 A.2d at 27.

11. Gross requested one extension of the discovery period, and that motion was granted on March 1, 1997 and discovery was extended to April 1, 1997. Gross' opposition to the District's motion for summary judgment, filed on March 20, 1997, did not assert that more time was needed. On March 25, 1997 Gross moved to conduct an inspection of police records and data to seek a possible report meeting the requirements of the notice statute, but no request was made to delay ruling on the District's motion. The trial court denied the March 25 motion to inspect on the same day that it granted the District's motion, July 14, 1997. There was no motion for reconsideration.

12. Because the common law claims against the District are barred by § 12–309, we need not address any statute of limitations issues raised.

13. 42 U.S.C. § 1983 establishes a cause of action against any person who "under color of any statute, ordinance, regulation, custom, or usage" of any state or the District of Columbia deprives another person of "any rights, privileges, or immunities secured by the Constitution and laws." The complaint alleges underlying constitutional violations of Spears' Fifth, Eighth, and Fourteenth Amendment rights to due process and freedom from cruel and unusual punishment. It is clear from the proceedings that Gross was also claiming Fourth Amendment violations, which his brief on appeal posits as the actual foundation of the § 1983 count. The notice requirement of D.C.Code § 12–309 does not apply to claims under 42 U.S.C. § 1983. *See Johnson–El v. District of Columbia,* 579 A.2d 163, 170 (D.C.1990).

itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Board of County Comm'rs v. Brown,* 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018; emphasis in original). "A showing of simple or even heightened negligence will not suffice" to establish municipal liability for constitutional torts. *Id.* at 407, 117 S.Ct. 1382; *see also Canton v. Harris,* 489 U.S. 378, 382, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (quoting test rejected by the Court that municipal liability for failure to train could rest on municipal actions that were reckless, negligent, or grossly negligence). Rather, Gross "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences" with regard to violations of constitutional rights. *Board of County Comm'rs,* 520 U.S. at 407, 117 S.Ct. 1382 (quoting *Harris,* 489 U.S. at 388, 109 S.Ct. 1197).

In *Harris, supra,* the Court applied *Monell's* principles in the context of police training. The Court adopted a high degree of fault and causation for such cases. *See* 489 U.S. at 390–92, 109 S.Ct. 1197. The Court stated that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983," *id.* at 389, 109 S.Ct. 1197, and that "permitting cases against cities for their 'failure to train' employees to go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities—a result we rejected in *Monell.*" *Id.* at 392, 109 S.Ct. 1197 (citation omitted). As to causation, liability can be established only by proving "that the deficiency in training actually caused the police officers' indifference to [the plaintiff's rights]. Would the injury have been avoided had the [officers] been trained under a program that was not deficient in the identified respect?" *Id.* at 391, 109 S.Ct. 1197 (footnote omitted).

■ We turn then to Gross' proffer in opposition to summary judgment. Under Super. Ct. Civ. R. 56(c), summary judgment should be entered only where the record shows that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See, e.g., Partnership Placements, Inc. v. Landmark Ins. Co.,* 722 A.2d 837, 841 (D.C.1998). A motion for summary judgment may be granted if "(1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, *could not* find for the nonmoving party, (3) under the appropriate burden of proof." *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979) (footnote omitted; emphasis in original), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). "Rule 56(c) 'mandates the entry of summary judgment, after adequate discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Fulwood, supra,* 639 A.2d at 600 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "Conclusory allegations by the nonmoving party are insufficient to establish a genuine issue of material fact or to defeat the entry of summary judgment." *Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 198 (D.C.1991).

■ Here it was Gross' burden to show that "the need for more or different training [or supervision of police officers was] so obvious, and the inadequacy so likely to result in a violation of constitutional rights," *Harris,* 489 U.S. at 390, 109 S.Ct. 1197, as to amount to a policy of deliberate indifference to citizens' constitutional rights on the part of the District. Gross' proposed evidence as to lack of training and supervision of MPD officers can be summarized as follows: (1) the following statements by his police expert, Robert W. Klotz: that there was a lack of adequate refresher training, that there was no system of officer evaluation, that the Civilian Complaint Review Board was ineffective and officers knew that they would seldom

be disciplined for use of excessive force, that Chief Thomas had announced a need to overhaul training and recruiting in January 1993, that record keeping was so poor that auditors could not evaluate whether police recruits were adequately trained, and that these factors showed deliberate indifference and caused Spears' injuries; [14] (2) the District has failed to promulgate regulations regarding "deadly use of flashlights" as well as regulations expressly prohibiting officers from using batons as neck choking devices; (3) the District's failure to gather systematic data on internal training and evaluation, excessive use of force complaints, and lawsuits against the MPD alleging constitutional violations; (4) various clippings from news sources citing problems with the MPD's training and evaluation systems and with the CCRB; and (5) the facts of this case according to plaintiff's witnesses.

We think this case to be similar to and controlled by *Fulwood, supra. Fulwood* addressed the issue of whether the chief of the MPD was qualifiedly immune from a claim brought under 42 U.S.C. § 1983 that Chief Fulwood's "deliberate indifference" to a widespread pattern of police brutality and unlawful arrests caused the assault and injury of appellant by MPD officers. Although the issue was qualified immunity, *Fulwood* applied the same constitutional standards for "deliberate indifference" that apply to determining municipal liability under § 1983. *See* 639 A.2d at 599. We stated there that "to establish a failure to supervise and train ... amounting to a

'policy' of indifference, there must be evidence from which a trier of fact could find a widespread pattern of misconduct by subordinate officers which he reasonably may be said to have disregarded." [15] *Id.* at 600 (footnote and citations omitted). In *Fulwood*, the appellees attached the following exhibits to their opposition for summary judgment: (1) a list of court judgments entered against the District for § 1983 claims or alleged torts by MPD officers from 1987–91; (2) a list of pending suits alleging misconduct by MPD officers; (3) portions of appellant's answers to interrogatories; (4) a written opinion of appellant's expert, the same Robert Klotz as in the case before us, that appellant's injuries were caused by improper procedures and excessive force and reflected a lack of officer training and supervision; (5) a press release describing the results of a survey of members of the D.C. Fraternal Order of Police concerning the adequacy of their training; and (6) results of a GAO study of police training concluding that there was great inconsistency in training of new officers. *Id.* at 596. We concluded in *Fulwood* that the evidence provided was insufficient to demonstrate a triable issue as to Chief Fulwood's deliberate indifference. *Id.* at 601–02. The court found that conclusory statements by the same expert, Mr. Klotz, that training deficiencies caused the use of excessive force by officers in that instance did not adequately explain the link between statistics presented in that case regarding judgments and pending suits against the District for false ar-

---

14. Mr. Klotz's affidavit and proposed testimony is further explicated in the discussion toward the end of Part I, *supra.*

15. A plaintiff may also show deliberate indifference by demonstrating a failure to train in a particular area where there is a manifest need for such training. *See Harris*, 489 U.S. at 390, 109 S.Ct. 1197 (liability may be imposed on a municipality where "in light of the duties assigned to specific officers ... the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to

the need"). We do not think that it is "so obvious" that the particular inadequacies alleged by Gross—i.e., failure to train officers in or promulgate regulations regarding "deadly use of flashlights;" failure to promulgate regulations prohibiting officers from using batons as neck choking devices, even though officers are prohibited from doing so by law, *see* D.C.Code §§ 4–188 to –190 (1994); and failure to provide in-service refresher training— would be "so likely" to result in the alleged constitutional violations by the officers in this case that the District could reasonably be said to be deliberately indifferent to citizens' rights.

rest and assault and Chief Fulwood's deliberate indifference. *Id.* at 602 (Klotz's opinion "fails to provide a matrix within which inferences about Fulwood's culpability can reasonably drawn from the numerical data alone").

In this case, as in *Fulwood,* the District provided the affidavit of its police chief attesting to the MPD's training policies on use of force, as well as statutes, regulations, and MPD policies regarding minimum and reasonable use of force. In this case, Gross' exhibits failed to provide evidence of an essential part of the claim, to show the "widespread pattern of police misconduct" that we said in *Fulwood* was necessary "to establish a failure to supervise and train . . . amounting to a 'policy' of indifference." *Id.* at 600. In *Fulwood,* the court was concerned with the failure of the police expert to adequately explain or link the statistics on excessive use of force with the alleged failure to train or supervise or to offer any other proof to enable a factfinder to conclude that the number of suits and judgments against the District demonstrated negligent training and supervision, let alone a "policy" of "deliberate indifference ." *Id.* at 601. The same deficiency exists in this case. Moreover, in contrast to *Fulwood,* no statistical or other evidence was even presented here to establish a "widespread pattern of police misconduct," but only conclusory assertions in this regard.

In both this case and *Fulwood,* appellant also alleged that inefficiencies in the CCRB's processing of complaints of police misconduct created municipal liability on the part of the District. The court in *Fulwood* concluded that there was no basis for attributing defects in the CCRB's procedures to Chief Fulwood since the CCRB was an independent adjudicative body created by the Council of the District of Columbia, *see* 639 A.2d at 602–03, a disposition not applicable here where the District was the defendant.

Appellant cites to *Cox v. District of Columbia,* 821 F.Supp. 1 (D.D.C.1993), *aff'd without opinion,* 309 U.S.App. D.C. 219, 40 F.3d 475 (1994). In that case, involving a § 1983 claim against the District by a citizen who was assaulted by several MPD officers, the district court found that inadequacies in the District's system for disciplining MPD officers, particularly the known lengthy delays in the processing of CCRB complaints, amounted to a policy or custom of deliberate indifference to citizens' constitutional rights. *See* 821 F.Supp. at 12–17. The court's finding in *Cox* was based in large part on the extremely detailed statistical evidence presented in that case. *Id.* at 13–15 (contrasting the evidence presented to that in *Carter v. District of Columbia,* 254 U.S.App. D.C. 71, 795 F.2d 116 (1986), where the court upheld a directed verdict, concluding that complaints, pleadings and press clippings concerning use of excessive force and some testimony concerning specific instances of excessive force were insufficient to establish municipal liability). The court further found that the District's system of inadequate discipline caused the police officers' violation of Cox's constitutional rights. 821 F.Supp. at 19–20. In *Cox,* the police officer who played the largest role in the assault had been the subject of a prior CCRB complaint for false arrest and excessive force which was supported by an uncontradicted affidavit from the complainant. As of the time of the incident in *Cox,* approximately one year after the first CCRB complaint against the officer was filed, no action had yet been taken by the CCRB. *Id.* at 19. The court concluded that had the CCRB functioned properly, the police officer in question would likely have been terminated from the police force, and at the very least subjected to an investigation, before the *Cox* incident occurred. *Id.*

In this case, by contrast, Gross presented no specific evidence regarding the CCRB backlog, but merely his expert's statement:

> That the use of the CCRB to evaluate complaints of excessive use of force and harassment was inefficient and ineffective. There was such a backlog of cases within the CCRB, that officers of the

MPD knew that they would seldom be disciplined by the Department for acts of excessive force and abuse of power. In 1995, when the board was abolished, almost two-thirds of the cases were over two years old.

Moreover, no evidence was offered that any officers involved in the alleged incident here had a history of citizens complaints or that their actions were otherwise affected by deficiencies in the CCRB process, nor does Gross in any other way explicitly relate the CCRB backlog to the alleged events of this case.

Indeed, in general, even if Gross' expert could show that the District's training and supervision of its officers were so inadequately implemented as to constitute a policy of deliberate indifference, he provides no evidence to show that any "deficiency in training [or supervision] *actually caused* the police officers' indifference to [Spears' rights]." *Harris*, 489 U.S. at 391, 109 S.Ct. 1197 (emphasis added). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied . . . ." *Board of County Comm'rs, supra*, 520 U.S. at 405, 117 S.Ct. 1382. "To prevent municipal liability for a . . . decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410, 117 S.Ct. 1382. The expert's conclusory assertions, without any detailed explanation of the link in this case, or, e.g., reliance on studies demonstrating a link between deficiencies in training and supervision and constitutional violations by police officers generally, were insufficient for a reasonable jury to conclude that the District had a policy of deliberate indifference to training or supervision of its police officers that actually caused the alleged brutality by the unknown officers in this case. Under the exacting standards established by the Supreme Court for municipal liability under 42 U.S.C. § 1983, we conclude summary judgment was proper here.

## III. Dismissal as to unknown officers

Finally, we examine whether appellants' claim may be deemed to have been properly dismissed as to the unknown police officers, none of whom had been served. While we agree with Gross that the complaint was sufficient to withstand a motion to dismiss with regard to these officers for failure to state a claim under Rule 12(b)(6), a dismissal without prejudice was proper under Super. Ct. Civ. R. 4(m).

Rule 4(m) provides in relevant part:

> *Time limit for service.* Within 60 days of the filing of the complaint, the plaintiff must file either an acknowledgment of service or proof of service of the summons, the complaint and any order directed by the Court to the parties at the time of filing. The acknowledgement or proof *shall be filed as to each defendant who has not responded to the complaint.* Prior to the expiration of the foregoing time period, a motion may be made to extend the time for service. . . . Failure to comply with the requirements of this Rule shall result in the dismissal without prejudice of the complaint. The Clerk shall enter the dismissal and shall serve notice thereof on all the parties entitled thereto.

Super. Ct. Civ. R. 4(m) (emphasis added). "[Rule 4(m)] confers no discretion in the event of noncompliance; in the most straightforward manner, failure to timely file proof of service compels automatic dismissal." *Wagshal v. Rigler*, 711 A.2d 112, 114 (D.C.1998) (citing *Cameron v. Washington Metro. Area Transit Auth.*, 649 A.2d 291, 293 (D.C.1994)). "The language of this rule is plain and unambiguous. The rule states that . . . failure to [follow its prescriptions] *shall* result in dismissal." *Cameron*, 649 A.2d at 293 (emphasis in the original). "[T]he mandatory language does not permit the court to exercise any discretion." *Id.*

The rule states that the acknowledgment or proof of service shall be filed

as to *each* defendant who has not responded to the complaint, which indicates that it is applicable in situations where some defendant has responded to the complaint but others have not.[16] Although the District was served with the complaint, the unknown police officers named in the complaint were not served within 60 days, and thus no acknowledgment or proof or service was filed as to such officers. Nor was any motion to extend time filed in the trial court. Thus Gross failed to comply with the requirements of Rule 4(m) as to those officers.[17] Because "failure to comply with the requirements of this rule shall result in the dismissal without prejudice of the complaint" as to each defendant for whom such an acknowledgement of service or proof of service should have been filed but was not, the trial court's dismissal of the claims against the unknown officers acted as such a dismissal under Rule 4(m). Rule 4(m) "evidences its mechanical rather than dispositive nature. Unlike most dismissals, a dismissal under this rule can only be made without prejudice." *Wagshal, supra,* 711 A.2d at 114 (footnote omitted). Hence, the dismissal here as to the unnamed officers must be deemed to have been made without prejudice.

*Affirmed.*

---

**16.** The rule further states that the clerk shall enter the dismissal and shall serve notice thereof on "all the parties entitled thereto," again suggesting that there may be other defendants as parties. We need not concern ourselves here as to the operation of the rule in situations where a properly served defendant remains active in the case; here summary judgment was properly granted as to the District and at that point all the remaining defendants were subject to dismissal under the rule.

**17.** Rule 4(m) has to be read also in conjunction with Super. Ct. Civ. R. 41. Super Ct. Civ. R. 41(b) provides in pertinent part:

Any order of dismissal entered *sua sponte,* including a dismissal for failure to effect service within the time prescribed in Rule 4(m), shall not take effect until fourteen (14) days after the date on which it is docketed and shall be vacated upon the granting of a motion filed by plaintiff within such 14 day period showing good cause why the case should not be dismissed.

Gross asserts that the dismissal was invalid because he was not given notice that the dismissal had been entered as required by Rule 4(m). However, the trial court's July 14, 1997 order, which Gross acknowledges operates as a dismissal as to the officers, provided such notice. Gross filed no motion under Rule 41(b) to vacate the dismissal. The appeal from the dismissal order in this case was taken more than fourteen days after entry of the dismissal order.