Carolyn A. DINGWALL, Appellant,

v.

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY, Appellee.

Nos. 99–CV–79, 99–CV–80.

District of Columbia Court of Appeals.

Submitted Nov. 28, 2000.

Decided Feb. 15, 2001.

Carolyn A. Dingwall, filed a brief pro se.

Robert R. Rigsby, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and James C. McKay, Jr., Assistant Corporation Counsel, filed a brief for appellee.

Before STEADMAN, SCHWELB, and GLICKMAN, Associate Judges.

SCHWELB, Associate Judge:

Carolyn A. Dingwall appeals from an order of the trial court dismissing her suit against the District of Columbia Water and Sewer Authority (WASA). The trial judge held that the action failed because Ms. Dingwall had not provided pre-suit notice to WASA, as required in actions against the District of Columbia by D.C.Code § 12–309 (1995). Ms. Dingwall contends that WASA is a separate corporate entity that is amenable to suit in its own name, that her action was not brought against the District of Columbia, and that § 12–309 therefore does not apply. We agree with Ms. Dingwall's position on this issue.

The District contends, in the alternative, that the judgment should be affirmed because Ms. Dingwall lacked standing to bring the suit. We agree with the District with respect to the first of the two claims asserted in the complaint, but we conclude that Ms. Dingwall had standing to bring her second claim. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

I.

This suit concerns a three-story Victorian house located at 459 Florida Avenue N.W. in Washington, D.C. The building is owned by one Lucille Y. Baguidy. According to the allegations of the *pro se* complaint, the original plaintiffs, Ms. Dingwall, Delphine Jones, and Jacqueline M. King, were "property managers" for and tenants

of the premises.[1] At the time the complaint was filed, the plaintiffs were renting the top floor of the house, and they "intended to use this space for the purpose of operating a business."[2] The complaint alleged that the second floor unit was "unoccupied pending the arrival of [a] new tenant family."

In their complaint, the plaintiffs asserted a claim of negligence (Count I) and a claim of "breach of covenant of quiet enjoyment (private nuisance)" (Count II).[3] In Count I, the plaintiffs alleged that WASA failed to exercise due care in investigating and remedying a disputed water bill. According to the plaintiffs, WASA's negligence resulted in the disruption of water service and the loss of water pressure at the premises.

Although Ms. Baguidy, the owner of the premises, was not a party to the action, the plaintiffs purported to assert their negligence claim on Ms. Baguidy's behalf. According to Paragraph 12 of the complaint, "[WASA]'s negligenc[e] by improperly handling the problem of no water at the 459 Florida Avenue address resulted in a loss of revenue for the owner." In their prayer for relief with respect to the negligence count, the plaintiffs demanded judgment against WASA as follows:

1. Compensatory damages of $9,699 for lost revenue from an inability to collect rents totaling $1,200 per month, *payable to Lucille Y. Baguidy.*

2. Consequential damages of $2,000 for expenses in cleaning, plumbing and painting of premises due to a lack of water, *payable to Lucille Y. Baguidy.*

(Emphasis added.)

In Count II of their complaint, the plaintiffs reiterated their prior allegations and asserted that they had personally suffered damages as follows:

i. an inability of the [p]laintiffs to obtain proper occupancy permits, etc. for [their] business; [and]

ii. a loss of some business in the District of Columbia.

The plaintiffs further alleged that, on some occasions, the conduct of WASA's representatives had been "unprofessional, conscious, willful, and in utter disregard of the [p]laintiffs' private rights to the use and enjoyment of the premises in question." The plaintiffs prayed for "compensatory and consequential damages" of $10,000 and for punitive damages in the same amount.

In response to the suit, WASA filed a motion to dismiss the complaint or, in the alternative, for summary judgment.[4] The motion was grounded on the plaintiffs' failure to give notice to the District pursuant to § 12–309. In a footnote to the motion, WASA asserted that "this case is further subject to dismissal on the grounds that the plaintiffs herein lack standing to bring an action on behalf of a property owner." On December 21, 1998, in a brief written order, the trial judge dismissed the action on the ground that "proper notice was not given under D.C.Code § 12–309." The judge did not reach WASA's claim that the

1. Although all three plaintiffs were parties in the trial court, only Ms. Dingwall has prosecuted an appeal.

2. The business which the plaintiffs proposed to operate was not described in the complaint. In a submission to this court, Ms. Dingwall has identified the business as Missionaries In Action, "an entity that in addition to performing services, had aspired to establish community-based ministerial programs from the premises consistent with D.C. law."

3. We have characterized the live claims as Count I and Count II for ease of reference.

The plaintiffs did not use this terminology in the complaint.

4. Although the complaint identified WASA, and not the District, as the defendant, the defense motion to dismiss or for summary judgment was erroneously captioned *Carolyn A. Dingwall, et al. v. District of Columbia.* In the first sentence of their motion, WASA's attorneys stated: "Defendant *District of Columbia* ... moves this [c]ourt for an [o]rder dismissing plaintiffs' complaint against *it* with prejudice or, alternatively, granting summary judgment in *its* favor." (Emphasis added.)

plaintiffs lacked standing to sue. Ms. Dingwall filed a timely notice of appeal.

## II.

■■■ Section 12–309 provides in pertinent part as follows:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless within six months after the injury or damage was sustained, the Claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause and circumstances of the injury or damage.

Compliance with this notice requirement is mandatory in actions to which the statute applies. *See, e.g., District of Columbia v. Dunmore,* 662 A.2d 1356, 1359 (D.C.1995). The applicability of § 12–309 turns on whether or not the present action is one against the District of Columbia. We hold that it is not.

WASA was established in 1996 "as an independent authority of the District government." D.C.Code § 43–1672 (1998). It is "a corporate body, created to effectuate certain public purposes, that has a separate legal existence within the District government." *Id.* WASA is *"sui juris"*; *i.e.,* it has the power "[t]o sue or be sued" in its own name. D.C.Code § 43–1673(1). WASA is also authorized by law to enter into contracts with, *inter alia, "the District,* the United States, Maryland, or Virginia, or their political subdivisions." D.C.Code § 43–1673(10) (emphasis added). WASA's authority to enter into a contract with the District is inconsistent with the notion that WASA is indistinguishable from the District; an entity does not contract with itself.[5]

Shortly after WASA was established, Congress enacted legislation authorizing WASA to issue revenue bonds for wastewater treatment facilities. *See* Pub.L. 109–184 § 3, 110 Stat. 1697 (Aug.1996); D.C.Code § 43–1679. The legislative history of the federal enactment reveals that WASA was intended to have a separate legal and fiscal existence, as well as considerable independence. As stated in the House Report,

> [t]he thrust of the Water and Sewer Authority proposal was to separate water and sewer revenues from the General Fund so that further diversion of those funds would not be possible. The Water and Sewer Authority would set the rates it charged at whatever level was required to make it completely self-supporting and it would finance capital projects through revenue bonds secured by its own revenue.

— — —

The new Water and Sewer Authority being created is independent, self-funded, and not in the General Fund of the District of Columbia budget. H.R. 3663 therefore takes the Authority out of the District[']s budget process. Other than nominating and confirming Board members for the Authority, the Mayor and Council will have no other role to play by way of exercising influence over the Authority. While the Mayor and Council may comment on the budget, they can not change it. It is Congress alone that may change the Authority[']s budget under H.R. 3663, and Congress alone will be authorizing and appropriating the Authority[']s budget. As a necessary corollary, the Authority will be exempt from the mid-year budget reductions which may be ordered by the Mayor.

The Committee notes with favor that the Water and Sewer Authority is not only allowed, but is mandated to develop its

---

5. WASA's Board of Directors consists of eleven members. Only six of the eleven must be residents of the District, and no more than four may be District employees or officials. The other members are appointed by the Mayor, but each is recommended by one of three participating suburban jurisdictions (Fairfax County, Virginia; Montgomery County, Maryland; and Prince George's County, Maryland). *See* D.C.Code § 43–1674 (2000 Supp.).

own personnel and procurement systems. These provisions along with taking the Authority off budget will overcome past personnel problems caused by FTE caps and hiring freezes. Getting the Authority out from under the District[']s cumbersome and ineffective procurement system is expected to greatly improve the efficiency and cost savings available through good management and competitive bidding without an onerous overlay of Council enacted set asides and special considerations.

H.R. REP. No.104–635, at pp. 6, 16 (1996).

In light of this background, WASA demonstrably is not the same entity as the District of Columbia, and a suit against WASA is not the same thing as a suit against the District. The legislature having provided that WASA can sue and be sued in its own name, a party claiming to be aggrieved by WASA's conduct sues WASA, not the District. Construing the language of § 12–309, as we must, in accordance with its common everyday meaning, see, e.g., James Parreco & Son v. District of Columbia Rental Hous. Comm'n, 567 A.2d 43, 46 (D.C.1989), we conclude that the statute has no application to a suit brought against WASA to which the District itself is not a party.

In Simmons v. District of Columbia Armory Bd., 656 A.2d 1155 (D.C.1995) (per curiam), the plaintiff purported to bring an action against the District of Columbia Armory Board. He failed, however, to provide pre-suit notice of his claim to the District in conformity with § 12–309. The trial court dismissed the action, and this court affirmed. We did so, however, because (unlike WASA here) the Armory Board was not sui juris. The court explained that "[f]ailure to notify the Mayor within six months of the injury will result in dismissal of the suit unless the entity being sued has been authorized by Congress to be sued." Id. at 1156 (emphasis added; citation omitted). We went on to observe that

[t]he Armory Board is not like the Redevelopment Land Agency which Congress explicitly gave the power to sue and be sued. See D.C.Code § 5–803(b) (1981) (giving the Agency the power to "sue and be sued"). As with the Housing Authority in Braxton [v. Nat'l Capital Hous. Auth., 396 A.2d 215, 217 (D.C. 1978) ], Congress has not authorized the Armory Board to be sued.

Id. at 1157. Although Simmons did not present the question whether § 12–309 would have applied if the Armory Board had been amenable to suit in its own name, the rationale of the court's opinion supports our conclusion that District-related sui juris entities, other than the District itself, are not entitled to pre-suit notice pursuant to that statute.

In Downs v. Bd. of Trustees of the Univ. of the District of Columbia, 112 Daily Wash. L. Rptr. 493 (Super.Ct.D.C.1984), the plaintiff sued the Board of Trustees of the University of the District of Columbia (UDC), alleging sexual harassment by a UDC employee. Like WASA in this case, UDC's Board of Trustees was a separate body corporate, which had the power to sue and be sued in its own name. Id. at 497 (citing D.C.Code § 31–1511(a) (1981)). The Trustees filed a motion to dismiss the action for failure to provide pre-suit notice in conformity with § 12–309. The court denied the motion, finding it to be

readily apparent from the foregoing statutory provisions that Congress has taken considerable pains to make the Board of Trustees a separate juridical and fiscal entity, and thus to differentiate suits against the Board from suits against the District of Columbia.

Id. The court continued:

There is nothing in the statute establishing the Board of Trustees as a suable entity which expressly or implicitly conditions its amenability to suit on compliance with § 12–309. On the contrary, § 12–309 applies by its terms only to suits against the District of Columbia, and not to actions against other suable entities. Although Congress could have made actions against the Board contin-

gent on some kind of notice identical or similar to that required in § 12–309 for suits against the District, it did not do so.

*Id.* at 497–98. Congress not having enacted a pre-suit notice requirement, the court concluded that "[t]he extension of § 12–309 by judicial 'construction' to suits not reached by its terms would, in the [c]ourt's view, deprive plaintiffs of the right to such reasonable notice [of what they must do to have their cases heard on the merits]." *Id.* at 498.[6]

The court in *Downs* also cited *Gold v. City of New York*, 80 A.D.2d 138, 437 N.Y.S.2d 973 (App. Div. 1st Dep't 1981), as an illustration of "what Congress might have written but did not write into the statute governing the UDC Board of Trustees." 112 Daily Wash. L. Rptr. at 498. In *Gold*, the minor plaintiff sued the City of New York and the Board of Education for injuries sustained on school property. A notice of claim was filed on the plaintiff's behalf with the City, but none was filed with the Board. The court held that there could be no recovery against the Board:

> Service of a notice of claim in compliance with section 50–e of the General Municipal Law is a prerequisite to the maintenance of a tort action against the Board of Education. [Education Law § 3813[2]]. The Board of Education and the City of New York are *separate and distinct entities* and service of a notice of claim upon the City does not constitute service upon the Board.

437 N.Y.S.2d at 974 (emphasis added).

WASA contends that Ms. Dingwall was required to provide pre-suit notice be-

cause, according to WASA, "the types of municipal functions currently performed by WASA that might be the object of claims of injury fall squarely within the types of activities that § 12–309 was designed to protect." But if this is true, the legislature could readily have included a provision comparable to § 12–309 in the WASA statute, or it could have written § 12–309 to require pre-suit notice not only in suits against the District, but also in actions against all or some of the *sui juris* agencies or instrumentalities affiliated with the District. The Council having failed to take either of these legislative steps, we do not think it appropriate to ordain, by judicial *fiat*, pre-suit notice which the relevant legislation does not require. Indeed,

> [w]hat [WASA] asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence,[7] may be included within its scope. To supply omissions transcends the judicial function.

*Iselin v. United States*, 270 U.S. 245, 250–51, 46 S.Ct. 248, 70 L.Ed. 566 (1926) (Brandeis, J.); *see also Chase v. District of Columbia Alcoholic Beverage Control Bd.*, 669 A.2d 1264, 1268–69 (D.C.1995) (quoting *Iselin*).

WASA also relies on D.C.Code § 43–1672(b), which provides that "except as provided in §§ 43–1684[8] and 43–1685,[9] the Authority shall be subject to all laws applicable to offices, agencies, departments, and instrumentalities of the District government, and shall be subject to the provi-

---

**6.** The court in *Downs* noted that the case before it must be "differentiated from situations in which plaintiffs have sued municipal entities which were not *sui juris*." *Id.* (citations omitted). The court recognized that "[i]n a case of that kind, the action may be treated as one against the District of Columbia, and the plaintiff must comply with the requirements of § 12–309." *Id.* This is essentially the same distinction made by this court eleven years later in *Simmons*.

**7.** Or, perhaps, intentionally.

**8.** Section 43–1684 largely exempts WASA from the District's procurement system.

**9.** Section 43–1685 provides, with certain exceptions, that the District's Merit Personnel System is inapplicable to WASA.

sions of the District of Columbia Self Government and Governmental Reorganization Act." We do not find § 43–1672(b) to be helpful to WASA's position. The phrase "subject to" imports the notion that WASA is subordinate to, or bound by, laws applicable to other District instrumentalities; it imposes duties, obligations, and restrictions, but does not confer protections or privileges. Indeed, the dictionary defines "subject" as "falling under the power or dominion of another." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2275 (1971); *cf. Hyman v. District of Columbia*, 101 U.S.App. D.C. 179, 182, 247 F.2d 585, 588 (1957) (in the law of wills, the words "subject to" restrict, qualify or limit the estate conveyed). By making WASA "subject to" various statutory requirements, the legislature specified what WASA may or may not do, but § 43–1672(b) has no bearing on the question whether the protections of § 12–309 apply to WASA.

In sum, we conclude that in light of the language of § 12–309, as well as the authorities that we have cited, the plaintiffs were not required to give notice to WASA pursuant to § 12–309 as a precondition to instituting this suit.

### III.

WASA next contends that Ms. Dingwall lacked standing to institute the action. We agree as to Count I but not as to Count II.

■ In order to have standing to maintain her action, a party must allege that she personally suffered injury in fact as a result of the defendant's conduct.

*See, e.g., District of Columbia v. Group Ins. Admin.*, 633 A.2d 2, 17–18 (D.C.1993). In Count I, the plaintiffs have alleged injury to the owner of the building, but they have failed to allege any facts that would entitle them to recover damages for losses incurred by her. Indeed, their prayer for relief in Count I asks that damages be awarded to Ms. Baguidy, and not to the plaintiffs. Absent some allegation that the plaintiffs were licensed to act in a representative capacity, they lacked standing to bring this claim on behalf of a third party.[10]

■ In Count II, however, the plaintiffs fairly alleged that WASA's conduct made it impossible for them to obtain proper occupancy permits for their business, and that they lost business as a result. WASA has not addressed Ms. Dingwall's standing to assert this claim, and we are aware of no reason, at least at this stage of the proceeding, for dismissing Count II of the complaint. Accordingly, we conclude that Ms. Dingwall has standing to prosecute Count II.

### IV.

For the foregoing reasons, we affirm the judgment in No. 98–CV–80 insofar as it dismisses Count I of the complaint, reverse the dismissal of Count II of the complaint, and remand the case for further proceedings consistent with this opinion.

*So ordered.*[11]

10. The plaintiffs alleged in the complaint that they were "property managers" for the premises, but Ms. Dingwall concedes that they were not licensed. At the time the action was brought, the applicable statute provided that no person acting in the capacity of a property manager could bring an action in the courts of the District in connection with the property without alleging that he or she was duly licensed. D.C.Code § 45–1926(c) (repealed 1999). The current statute provides that a "licensee [engaged to manage real estate]

may represent the owner as seller or landlord if they enter into a brokerage relationship that so provides." D.C.Code § 45–1934.1(e)(3) (Supp.2000). We know of no authority, and Ms. Dingwall has cited none, suggesting that an unlicensed "property manager" may sue on behalf of a non-party owner of realty.

11. In a separate appeal, No. 98–CV–79, Ms. Dingwall appeals from an order of the trial court vacating a default judgment in her fa-

vor. We affirm the order setting aside the default.