UNITED STATES, ex rel. Edward L. TOTTEN, Plaintiff,

v.

BOMBARDIER CORPORATION, and Envirovac Inc., Defendants.

No. Civ.A. 98–657(JHG).

United States District Court, District of Columbia.

March 27, 2001.

Herbert Vincent McKnight, Jr., Ashcraft & Gerel, Washington, DC, for Edward L. Totten, United States ex rel., plaintiff.

Aileen Meyer, Donald A. Carr, Winthrop, Stimson, Putnam & Roberts, Washington, DC, Mark R. Hellerer, Pillsbury & Winthrop, LLP, New York City, for Bombardier Corporation, defendant.

Barbara Ann Van Gelder, Wiley, Rein & Fielding, Washington, DC, Paul E. Lehner, Adducci, Dorf, Lehner, Mitchell & Blankenship, P.C., Chicago, IL, for Envirovac, Inc, defendant.

Keith V. Morgan, U.S. Attorney's Office, Washington, DC, for United States of America, non party.

## ORDER

JOYCE HENS GREEN, District Judge.

On March 16, 1998, Edward L. Totten ("Totten") brought a *qui tam* action under

the False Claims Act ("FCA" or "Act"), 31 U.S.C. § 3729 *et. seq.*, against Bombardier Corporation ("Bombardier") and Envirovac, Inc. ("Envirovac"). On December 15, 1999, the government declined to intervene in the case. Currently pending are motions to dismiss by both of the defendants, in which they argue that this Court lacks subject matter jurisdiction, that Totten has failed to state a claim, that Totten has failed to plead fraud with the required particularity, and that some of Totten's claims are barred by the statute of limitations. For the reasons set forth below, the Court finds that Totten has failed to state a claim, and the complaint is dismissed in its entirety.

## I. Background

In considering a motion to dismiss, the Court must accept the factual allegations contained in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. The complaint may be dismissed only if the plaintiff can prove no set of facts consistent with his allegations which would entitle him to relief. *See, e.g., Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Totten was formerly employed by the National Railroad Passenger Corporation ("Amtrak"). Bombardier has contracted with Amtrak to manufacture passenger rail cars. Envirovac manufactures toilet systems, and contracts with both Amtrak and Bombardier to provide toilet systems for passenger rail cars. Amtrak has delineated requirements for its toilet waste systems, which are contained in Specification 598. These specifications are incorporated into Amtrak's contracts with Bombardier and Envirovac.

Totten states that Envirovac and Bombardier supplied Amtrak with toilet systems that did not meet the requirements of Specification 598, and eventually had to be repaired or upgraded. Totten further alleges that the defendants were aware of the defects in their products, and that they made false statements to Amtrak that the products met all requirements and specifications.

The False Claims Act creates liability for any person who knowingly presents to the government a false or fraudulent claim for payment. 31 U.S.C. § 3729(a)(1). In 1986 Congress amended the Act by expanding the definition of "claim" to include requests "made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c). Private individuals may bring a *qui tam* civil action for a violation of section 3729, on behalf of themselves and the government. 31 U.S.C. § 3730(b). The instant complaint alleges that the defendants knowingly made false claims against Amtrak, and that both Amtrak and the United States Government were damaged as a result. The complaint does not articulate any theory as to why a false claim against Amtrak would constitute a false claim against the government.

## II. Analysis

■ The defendants correctly assert that Amtrak is not part of the government. Amtrak "is not a department, agency, or instrumentality of the United States Government." 49 U.S.C. § 24301(a)(3); *see also Lebron v. Nat'l Railroad Passenger Corp.*, 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) (holding that Congress does not have the authority to determine Amtrak's status for Constitutional purposes, but noting that a statutory declaration of Amtrak's status would be dispositive as to matters within

Congress' control). An assertion that the defendants presented false claims to Amtrak is therefore not, by itself, a sufficient allegation of a false claim under the Act.

### A. 31 U.S.C. § 3729(c)

█ In his opposition, Totten responds that a false claim need not be presented directly to the government, and cites to the expanded definition of "claim" found in section 3729(c), which includes requests made to grantees or other recipients of federal funds. The Complaint does not include any allegations regarding Amtrak's status as a contractor or grantee, nor does it specifically allege that the government either provided Amtrak with, or reimbursed Amtrak for, any funds connected with the alleged false claims. As such, the complaint fails to state a claim. Ordinarily the Court might permit Totten to amend the complaint, because it is possible that a heavily government funded entity, such as Amtrak, might qualify as a grantee under Section 3729(c). *See United States ex rel. Yesudian v. Howard University*, 153 F.3d 731 (D.C.Cir.1998).[1] However, the defendants have raised a threshold issue which

obviates the need to determine whether Amtrak's government funding could bring it within the scope of section 3729(c).

### B. 49 U.S.C. § 24301(a)(3)

The same provision in Amtrak's authorizing statute which establishes that Amtrak "is not a department, agency, or instrumentality of the United States Government" declares that Amtrak "shall not be subject to title 31." 49 U.S.C. § 24301(a). The defendants argue that as a result, the False Claims Act, which is part of title 31, simply does not apply to Amtrak. As a result, the Act's definition of "claim" could not apply to requests made to Amtrak, and the Court would not be permitted to consider whether or not Amtrak's government funding makes it a "contractor, grantee, or other recipient." Totten counters that his complaint does not "subject" Amtrak to anything at all, including title 31.

█ Title 31 occupies two volumes of the United States Code, and includes chapters which, among other things, establish

---

1. The Court also notes that, even if a *qui tam* action under the False Claims Act could be sustained against persons who presented false claims to Amtrak, the complaint is inadequate. Totten would need to show the existence of a request for payment, and that the request was fraudulent. *See United States v. Bouchey*, 860 F.Supp. 890, 893 (D.D.C.1994) (citing *United States ex rel. Glass v. Medtronic*, 957 F.2d 605, 608 (8th Cir.1992)). The second requirement, as an allegation of fraud, is subject to the requirements of Fed.R.Civ.P. 9(b). *See, e.g., id.; Bly–Magee v. California*, 236 F.3d 1014, 1018 (9th Cir.2001); *Gold v. Morrison–Knudsen Co.*, 68 F.3d 1475, 1476 (2d Cir.1995); *Cooper v. Blue Cross & Blue Shield, Inc.*, 19 F.3d 562, 568 (11th Cir.1994) (per curiam). The complaint includes blanket statements that the defendants made false representations to Amtrak that their products met all requirements and specifications, but does not state the "time, place, and content" of these alleged false statements. *See United*

*States ex rel. Joseph v. Cannon* 642 F.2d 1373, 1385 (D.C.Cir.1981); *see also* Fed.R.Civ.P. 9(b) ("the circumstances constituting fraud or mistake shall be stated with particularity"). In fact, Totten alleges that Amtrak was aware of the noncompliance of defendants' products, which does not suggest that the defendants represented that they were in compliance. Requesting payment for noncompliant products which satisfy neither their contracts nor Amtrak's regulations is not a violation of the False Claims Act. Only the false certification of compliance, where certification is a prerequisite to obtaining payment, would suffice. *See United States ex rel. Siewick v. Jamieson Science and Engineering, Inc.* 214 F.3d 1372, 1376 (D.C.Cir.2000).

In other circumstances Totten would be permitted an opportunity to amend his complaint, but, as the remainder of this Opinion demonstrates, such an opportunity is not warranted in this case.

the organization and procedures of the Department of the Treasury, General Accounting Office and Office of Management and Budget, and establish procedures and requirements for appropriations, the financial management of the federal government, the monetary system, government contracts and grants, and government corporations, including mixed-ownership corporations. 31 U.S.C. §§ 1 – 9702. Title 31 is primarily concerned with government entities, however, portions of it regulate private recipients of government funding. *See, e.g.,* 31 U.S.C. § 1352 (restrictions and reporting requirements on lobbying by recipients of federal contracts, grants, or loans). Interpretation of a statute begins with its plain meaning, despite the fact that removing Amtrak from the reach of title 31 could have potentially sweeping consequences. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *ITT World Comm., Inc. v. FCC,* 725 F.2d 732, 743 (D.C.Cir.1984). However, the words "subject to" leave some room for interpretation. A close examination of the language at issue and an exploration of the circumstances, context, and history of the enactment of the provision in question is in order.

### i. "Subject to"

Black's Law Dictionary defines "subject to" as "liable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable for." *Black's Law Dictionary* 1278 (5th ed.1979). For this case, the most pertinent of these definitions is "governed or affected by." In order for Totten to effectively state a claim, would the Court be compelled to interpret the False Claims Act in a manner which would cause that Act to "govern or affect" Amtrak?

■ The False Claims Act protects the government by safeguarding government funds from fraud. Section 3729(c) amends the FCA so that government funds which have passed through to a recipient remain protected against a third party's fraud against that recipient. The FCA thus confers a benefit on those recipients. The protection that the FCA provides might also be seen as a burden, although perhaps indirectly. In this case, Totten's action under the FCA would subject Amtrak's business transactions to the restrictions of the FCA, and Amtrak's business partners to the penalties which ensure compliance with those restrictions. If Amtrak is not "subject to" the FCA, the plaintiff may not bring a claim which relies on Amtrak's receipt of the benefits and burdens imposed by the FCA.

### ii. Legislative History of the Amtrak Reform and Accountability Act

■ An examination of the legislative history does not shed any more light on the meaning of the words "subject to," but does suggest that preventing the treatment of Amtrak as a grantee or recipient under the FCA would be in keeping with Congress' overall intent.

Congress amended Amtrak's authorizing statute with the Amtrak Reform and Accountability Act of 1997 ("Reform Act"). Pub.L. No. 105–134, 111 Stat. 2570. The overarching purpose of the Reform Act was to authorize appropriations for Amtrak while overhauling its authorizing statute, reducing costs, reducing federal involvement, and, ultimately, eliminating Amtrak's reliance on federal assistance. *See id.* at 13, 15; S.Rep. 105–85 at 1 (1997). The Reform Act was designed to allow Amtrak to "operate as much like a private business as possible." S.Rep. 105–85 at 1. For example, the Reform Act reduced statutory restrictions regarding labor and Amtrak's ability to contract work out, increased Amtrak's authority to design and manage its route system, insti-

tuted caps on tort liability from passenger train accidents, privatized Amtrak's stock structure, and relinquished the Department of Transportation's note and mortgage on the Northeast Corridor.

The Reform Act provided strong financial assistance to Amtrak, while simultaneously reducing the effects of federal involvement. In addition to decreasing the government's control over Amtrak's functioning, the Reform Act attempted to negate the normal repercussions of government funding. An example of this is found in the same section of the Reform Act as the provision at issue in this case. The section on "employee stock ownership plans" removes Amtrak from the list of government-owned and funded corporations, without actually withdrawing government funding. This allows Amtrak to escape the regulations that would normally apply to a corporation which is partly government owned and financed. Another repercussion of government funding is that it can bring private entities within the scope of the FCA's protections.

The overarching objective of permitting Amtrak to function like a private business illuminates Congress' intent regarding title 31. The vast majority of title 31 applies not to ordinary persons but to governmental and quasi-governmental entities. Congress' purpose in reforming Amtrak's authorizing legislation suggests that Amtrak was being screened off from title 31's controls on governmental entities. Whether or not Amtrak remains subject to title 31 in the same way that a privately funded, privately run entity would be,[2] Amtrak cannot become subject to title 31 by standing in place of the government—which is essentially what section 3729(c) of the False Claims Act allows.[3]

## III. Conclusion

The ordinary meaning of the words which render Amtrak "not subject to" title 31 bar Amtrak from being treated as subject to statutes contained within that title, regardless of whether a suit is brought against Amtrak. The context and legislative history of the Reform Act do not provide any clear indication that Congress meant to remove Amtrak from the reach of only certain portions of title 31.[4] The Court's best guide is Congress' intent that,

---

**2.** Any person may be subject to the FCA, for example, as a defendant alleged to have brought a false claim against the government.

**3.** The amendment to the False Claims Act which added section 3729(c) alters the definition of claim so that "a claim to a grantee is effectively a claim to the United States." *Ex rel. Yesudian*, 153 F.3d at 738 (discussing, but not deciding, the precise meaning of the amendment). The change appears to have been designed to ensure that a false claim would be "actionable although the claims or false statements were made to a party other than the Government, if the payment thereon would ultimately result in a loss to the United States." *Id.* (quoting S.Rep. No. 99–345, at 10, reprinted in 1986 U.S.C.C.A.N. at 5275).

**4.** Some aspects of the Reform Act's legislative history suggest the possibility that Congress may have had a much more limited intent regarding the interplay between Amtrak and title 31. However, the words which Congress employed are simply too broad to allow this Court to give effect to this possible intent.

Although the Reform Act included a section entitled "status and applicable laws" which amended the corresponding section of Amtrak's authorizing statute, the language at issue here was added through a section of the Reform Act with a more narrow focus, entitled "employee stock ownership plans." In addition to restructuring Amtrak's stock, this section made two changes to Amtrak's authorizing statute. First, the phrase "and shall not be subject to title 31" was added to 49 U.S.C. § 24301. Second, Amtrak was removed from the list of government owned and mixed-ownership government corporations subject to the chapter of title 31 covering "Government Corporations." *See* 31 U.S.C. § 9101. Its location in a portion of the Reform Act which served a relatively limited

to the extent possible, Amtrak should be treated as a privately run, privately funded corporation. In the absence of section 24301(a)(3), the government's funding of and involvement in Amtrak would ordinarily subject Amtrak to portions of title 31, including, potentially, the protections of the FCA. By sheltering Amtrak from the effects of title 31, Congress has prevented Amtrak's receipt of government funds from bringing Amtrak, and its business dealings, within the reach of the False Claims Act. As a result, Totten is not able to state a claim against the defendants for their alleged false claims against Amtrak. It is therefore

**ORDERED** that the motion to dismiss brought by Bombardier is granted; and it is

**FURTHER ORDERED** that the motion to dismiss brought by Envirovac, Inc. is granted.

IT IS SO ORDERED.

### *JUDGMENT*

In accordance with the Memorandum Opinion and Order issued on March 27, 2001, and Fed.R.Civ.P. 58, judgment is hereby entered in favor of defendants Bombardier Corporation and Envirovac, Inc., and against plaintiff United States, *ex rel* Edward L. Totten.

IT IS SO ORDERED.

purpose suggests that the phrase at issue here may have been intended to serve a similarly limited purpose. Congress may have simply intended to remove Amtrak from the reach of title 31's chapter concerning government corporations. Language in the House Report on the bill lends support to that possibility. The section by section analysis indicates that the relevant language "removes Amtrak from the Government Corporations Act." H.R.Rep. No. 105–251 at 34 (1997). However, Congress chose to use much broader language, invoking all of title 31, not simply chapter 91 of title 31. The chapter regarding government corporations is not the only part of title 31 potentially applicable to Amtrak, as this case demonstrates. The Court is compelled to give meaning to Congress' reference to the entirety of title 31. *See Kungys v. United States,* 485 U.S. 759, 778, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) ("no provision should be construed to be entirely redundant").