Carolyn A. DINGWALL, Appellant,

v.

DISTRICT OF COLUMBIA WATER
AND SEWER AUTHORITY,
Appellee.

Nos. 99–CV–79, 99–CV–80.

District of Columbia Court of Appeals.

Argued Nov. 6, 2001.
Decided May 30, 2002.

Carolyn A. Dingwall pro se.

Jack W. Campbell IV, appointed counsel amicus curiae, with whom Robert H. Klonoff, Washington, DC, was on the brief, argued in support of appellant.*

James C. McKay, Jr., Senior Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY, STEADMAN, SCHWELB, FARRELL, RUIZ, REID, GLICKMAN, and WASHINGTON, Associate Judges.

ON PETITION FOR REHEARING
EN BANC

Opinion of the court PER CURIAM.

On February 15, 2001, in *Dingwall v. District of Columbia Water and Sewer Auth.*, 766 A.2d 974 (D.C.2001) (*Dingwall I*), a division of this court held, *inter alia,* that in an action for negligence against the District of Columbia Water and Sewer Authority (WASA), appellant Carolyn A. Dingwall was not required by D.C.Code § 12–309 (1995) to provide pre-suit notice to the Mayor. *Id.* at 977–79. The division further held that D.C.Code § 43–1672(b)

---

* The en banc court expresses its appreciation to Mr. Campbell, Mr. Klonoff, and the firm of Jones, Day, Reavis & Pogue for their able and highly professional assistance to the court in this matter.

(1998), which provides in pertinent part, with exceptions not here applicable, that WASA shall be "subject to all laws applicable to offices, agencies, [and] departments of the District government," does not confer upon WASA the protections provided to the District by § 12–309. *Id.* at 979–80.

On June 7, 2001, we granted WASA's petition for rehearing en banc with respect to the foregoing issues and vacated the decision in *Dingwall I. Dingwall v. District of Columbia Water and Sewer Auth.*, 773 A.2d 423, 424 (D.C.2001) (per curiam) (*Dingwall II*). The en banc court now reinstates and adopts the division opinion in *Dingwall I*, with some brief elaboration as set forth below.

WASA points out that § 12–309 is in derogation of the common law principle of sovereign immunity, that the statute must be construed narrowly against claimants, *see, e.g., Gross v. District of Columbia*, 734 A.2d 1077, 1081 (D.C.1999), and that § 12–309 therefore applies to suits against agencies that are "within" the District government, whether or not those agencies are *sui juris.* WASA also argues that the division's construction of the words "subject to" in § 43–1672(b) is too narrow. According to WASA, the two statutes, when considered together, confer upon WASA the right to pre-suit notice which is provided in tort actions against the District by § 12–309.

We do not agree. Section 12–309 applies, by its terms, only to actions against the District of Columbia.[1] By contrast, the Federal Tort Claims Act (FTCA) contains a pre-suit notice provision for claims against a "Federal Agency." 28 U.S.C. § 2401(b). Congress has expressly defined "Federal Agency" to include "the executive departments, the judicial and legislative branches, *independent establishments of the United States, and corporations acting as instrumentalities or agencies of the United States." Id.* § 2671 (emphasis added). Congress could have written, but did not write, a similarly broad notice provision into § 12–309.

According the language of § 43–1672(b) its common everyday meaning, we conclude, as did the division, that this statute simply requires WASA to comply with all of the laws, regulations, and other obligations applicable to other agencies and instrumentalities of the District of Columbia. In our view, the construction of § 43–1672(b) for which WASA contends goes far beyond the natural import of the words used by the legislature. *Accord, United States ex rel Totten v. Bombardier Corp.*, 351 U.S.App.D.C. 30, ——, 286 F.3d 542, 547 (2002) ("an entity is subject to a particular legal regime when it is regulated by, or made answerable under, that regime")[2] (*rev'g* 139 F.Supp.2d 50 (D.D.C.2001)); *see also Downs v. Bd. of Trs. of the Univ. of the District of Columbia*, 112 DAILY WASH. L. RPTR. 493, 498 (Super.Ct.D.C.1984) ("the extension of § 12–309 by judicial construction to suits not reached by its terms would, in the court's view, deprive plaintiffs of the right to reasonable notice [of what they must do to have their cases heard on the merits"]) (quoted in *Dingwall I*, 766 A.2d at 979).

For the foregoing reasons, the judgment and opinion in *Dingwall I* are reinstated. The case is remanded to the trial court for

1. At oral argument, in response to a question from the bench, counsel for WASA did not deny, and thus effectively acknowledged, that this action was properly brought against WASA and could not have been brought instead against the District.

2. The appellate court's reading of "subject to" in *Totten* appears directly contrary to the approach urged by WASA.

further proceedings, consistent with this opinion and with *Dingwall I*, with respect to Count II of the complaint.

*So ordered.*

FARRELL, Associate Judge, dissenting:

I join Judge Ruiz's cogent opinion. I can see no reason, textual or otherwise, why the words "subject to" in § 34–2202.02(b) should not be read to mean simply that the same laws—"all laws"—"applicable to offices, agencies, departments, and instrumentalities of the District government" are likewise applicable to WASA. The court's narrow interpretation of those words as "impos[ing] duties ... and restrictions," but not "confer[ring] protections," comes with no explanation of why the Council would have wanted to deny WASA, part of the District government, the same protection of notice in responding to complaints that the District has long enjoyed in operating the water and sewer system.

But even accepting the court's reading of those two words as incorporating only statutes that subject WASA to obligations, the majority does not come to grips with the line of decisions of this court construing § 12–309 as a *relinquishment* by the District of traditional governmental immunity, provided it has received the notice set forth in the statute. *See, e.g., Campbell v. District of Columbia*, 568 A.2d 1076, 1078 (D.C.1990) ("[B]ecause § 12–309 is in derogation of the common law concept of sovereign immunity, [its notice requirement] must be strictly construed ... against waiver of immunity."); *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C. 1981) ("Section 12–309 constitutes a departure from the common law concept of sovereign immunity."); *Kelton v. District of Columbia*, 413 A.2d 919, 920 (D.C.1980) (affirming dismissal "for failure to meet the six-month notice requirement in the District of Columbia's statutory waiver of sovereign immunity. D.C.Code ... § 12–309."). Although the question of what immunity the District in fact possesses is a complex one, *see District of Columbia v. Owens–Corning Fiberglas Corp.*, 572 A.2d 394, 400, 403–04 (D.C.1989), the court has consistently held the notice requirements of § 12–309 to be part and parcel of the District's self-imposed *liability* for tortious acts of its agents. By operation of § 34–2202.02(b), WASA is subject to that same declaration of amenability to suit, but on the same condition of notice.

---

RUIZ, Associate Judge, with whom FARRELL, Associate Judge, joins, dissenting:

I cannot agree with the majority that the pre-suit notice requirements of § 12–309 do not apply to suits brought against WASA. The majority remarks that if the legislature had intended § 12–309 to apply to WASA, it "could readily have included a provision comparable to § 12–309 in the WASA statute." *Dingwall v. District of Columbia*, 766 A.2d 974, 979 (D.C.2001). In my opinion, the legislature *did* include such a provision in WASA's enabling legislation. The statute provides that, "Except as provided in §§ 34–2202.14 [the District's procurement system] and 34–2202.15 [the District's merit personnel system], [WASA] shall be subject to all laws applicable to offices, agencies, departments, and instrumentalities of the District government, and shall be subject to the provisions of the Home Rule Act...." D.C.Code § 34–2202.02(b) (2001), formerly D.C.Code § 43–1672(b) (1998). I think it is quite clear from the plain language of the statute that the Council intended *all* of the laws applicable to the District and its related subdivisions—including § 12–309—

to be applicable to WASA, with the exception of those specifically excluded.

The majority summarily dismisses this notion and, isolating the phrase "subject to" from the rest of the statutory provision, concludes that the term implies that WASA is *subordinate* to the laws which apply to other instrumentalities of the District and thus only "imposes duties, obligations, and restrictions, but does not confer protections or privileges." *Dingwall*, 766 A.2d at 980. That conclusion is not compelled by the use of the term "subject to" and the majority decides the issue without considering the broader, and I think more applicable, definition of the phrase in the context of § 34–2202.02. According to the leading legal dictionary, "subject to" has a variety of meanings, including not only those that connote subservience, but also more generally, "governed or affected by." BLACK'S LAW DICTIONARY 1425 (6th ed.1990). That definition, in my opinion, is more sensible in the context of § 34–2202.02(b), which provides that WASA is to be "subject to *all* laws" (emphasis added), except for the two statutes specifically listed, those having to do with the procurement and merit personnel systems. The majority's crabbed reading of "subject to" not only fails to consider the complete phrase "subject to all laws," but also ignores the rest of the statutory

provision, which puts WASA on an equal footing with "offices, agencies, departments and instrumentalities of the District government." The reference to those entities in the WASA statute indicates that the Council intended that WASA be governed by the same laws that apply to integral parts of the District government. Applied to this case, that means that lawsuits against WASA must first comply with the pre-suit notification requirements of § 12–309, just as any lawsuit against an office, agency, department or instrumentality of the District.[1]

This common sense reading of the WASA statute conforms with the purpose of § 12–309 and the Council's stated reasons for creating WASA. As Judge Farrell points out in his dissenting opinion, the reasons behind the notice provision of § 12–309 apply as strongly to WASA's operation of the water and sewer system as they did to its predecessor. Section 12–309 serves three important purposes: 1) to quickly investigate injuries arising from municipal operations before evidence becomes lost or witnesses unavailable; 2) to correct hazardous or potentially hazardous conditions in public property; and 3) to settle meritorious claims without litigation. *See, e.g., Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C.1981). WASA

---

1. The majority attempts to bolster the argument that "subject to all laws applicable [to the District]" merely imputes to WASA the burdens and not the protections of District law by referencing the D.C. Circuit Court of Appeals' recent decision in *United States ex rel Totten v. Bombardier Corp.*, 351 U.S.App. D.C. 30, 286 F.3d 542 (2002). That opinion, however, does not support the majority's position that "subject to" imposes only obligations. As the Circuit Court explained, "the words 'subject to' leave room for interpretation." *Id.* at ——, 286 F.3d at 547. The statute at issue in *Totten*, Amtrak's governing statute, provides that Amtrak is not "subject to" the

False Claims Act ("FCA"). Where a plaintiff brings a *qui tam* action under the FCA, not against Amtrak, but against a third party who has allegedly defrauded the federal grantee, common usage would suggest that it is the third party, and not the grantee, that is being made "subject to" the FCA. *Id.* at ——, 286 F.3d at 548. In the context in which it was used in the statute, the court held that "subject to" meant "regulated" or governed by directly, but did not include indirect effects on Amtrak resulting from its suppliers being subject to claims under the FCA. *See id.* at ——, 286 F.3d at 548.

performs an important public utility service which has traditionally been regarded as an indispensable governmental function. There is no evidence to suggest that the Council intended that the pre-suit notice requirements would not apply to WASA, when a dangerous condition related to the operation of the public sewer or water distribution system could, if left untended for a period of time, cause extensive damage to public or private property and perhaps even injury to unsuspecting citizens. The Council's stated reason for creating WASA—to fortify its financial viability—is aided by the protection § 12–309 provides for timely and orderly resolution of claims and correction of conditions that might lead to future claims. *See Totten,* 351 U.S.App. D.C. at ——, 286 F.3d at 549 (noting that to exempt Amtrak suppliers from claims under the False Claim Act would have "eliminated a weapon for protecting" the federal investment in Amtrak, "the very system that the legislation in question was aimed at protecting.")

The majority also concludes, without the aid of persuasive authority, that any "protections and privileges" afforded to the District are to be withheld from WASA simply because it is a *sui juris* entity. The cases that the majority relies on for this proposition are not helpful to the analysis of whether the legislature intended that § 12–309 would be applicable to WASA by operation of § 34–2202.02(b). First, as the majority concedes, in *Simmons v. District of Columbia Armory Bd.,* 656 A.2d 1155 (D.C.1995) (per curiam), we were not presented with the question whether § 12–309 would have applied to the District of Columbia Armory Board had it been a *sui juris* entity. *See Dingwall,* 766 A.2d at 978. Rather, because the Armory Board could not be sued, the lawsuit had to be against the District, and thus had to comport with the pre-suit notice requirements of § 12–309. Neverthe-

less, even if the Armory Board had been *sui juris* and we had decided the issue in the manner in which the majority here believes that we would have, the case would still not have been on all fours with the instant action, unless the enabling legislation of the D.C. Armory Board also stated that the Board will be "subject to all laws applicable" to the other agencies and instrumentalities of the District government. This is precisely why the division's reliance on *Downs v. Bd. of Trustees of the Univ. of the District of Columbia,* 112 Daily Wash. L. Rptr. 493 (D.C.Super.Ct. Feb. 6, 1984), is similarly misplaced. The trial court in that case, unlike the situation here, was not confronted with language in the enabling legislation of the Board of Trustees which indicated that the laws of the District would apply to the Board despite its *sui juris* status. Nor does *Braxton v. National Capital Hous. Auth.,* 396 A.2d 215 (D.C.1978), support the proposition that § 12–309 applies only to D.C. government entities that are not *sui juris.* In *Braxton,* the plaintiff filed suit against the National Capital Housing Authority and the District of Columbia. The suit against the Authority was dismissed because it was not amenable to suit, *see id.* at 217; the suit against the District was dismissed because plaintiff did not comply with § 12–309's pre-suit notice requirements. *See id* at 217–18. We never considered whether § 12–309 would or would not apply to a District entity based on whether it is *sui juris.*

Therefore, I conclude that § 34–2202.02(b) imports the requirements of § 12–309 to suits against WASA.

Finally, although I believe it is unnecessary to decide in this case whether § 12–309 applies to WASA directly, and not only by incorporation in D.C.Code § 34–2202.02(b), I find problematic the majority's analysis of that issue. The require-

ments of § 12–309 apply to actions brought against the "District of Columbia." As evidenced by the statutory provisions that created WASA and the legislative history leading up to the creation of the Authority, the Council intended that, notwithstanding that WASA was to be a fiscally independent *sui juris* entity, it would nonetheless be an "independent authority of the District government" that would continue to perform the functions of its predecessor, D.C.Code § 34–2202.02(a) (2001), formerly D.C.Code § 43–1672(a) (1990), and remain governed by the laws normally applicable (with two specific exclusions) to entities that are integral parts of the District government.[2] In the absence of contrary indication, such a relationship strongly suggests that WASA, as its predecessor, should be considered part of the District of Columbia. That an action is styled against WASA because it is *sui juris* does not answer the question whether WASA is part of the District for purposes of § 12–309.

Moreover, it is questionable whether the Council, even if it desired to do so, has the authority to create an entity that is truly separate from the District. Congress established the Council as it exists today and granted to it "the authority to create, abolish, or organize any office, agency, department, or instrumentality *of the government of the District* and to define the powers, duties, and responsibilities of any such office, agency, department or instrumentality." D.C.Code § 1–204.04(b) (2001), formerly D.C.Code § 1–227(b) (1999) (emphasis added); *see* District of Columbia Self–Government and Governmental Reorganization Act of 1973, Pub.L. 93–198, § 404, 87 Stat. 774, 787. This case presents an issue we have not previously had occasion to decide, and which the majority does not address: whether because WASA was created by the Council, not by Congress,[3] WASA must be an office, agency, department, or instrumentality *of* the District of Columbia, and thus, part of the District itself. Whether or not WASA is *sui juris* is not dispositive of the question.[4] Under the agency-creating powers Congress delegated to the Council, WASA could not be, as the majority contends, anything more than part "of the government of the District," and thus, suits against it are governed by § 12–309.

2. The Council provided that the bill establishing the District of Columbia Water and Sewer Authority was intended to reorganize the Department of Public Works to create "a new *District agency* with funding completely separate from the General fund and with independent personnel and procurement systems." Water and Sewer Authority Establishment Act and Department of Public Works Reorganization Act of 1996, D.C. Act 11–201, § 501(g)(3), 43 D.C.Reg. 548, 571 (emphasis added).

3. I note that the University of the District of Columbia and its Board of Trustees, which the trial court determined not to be subject to § 12–309 in *Downs*, was created by Congress, not the Council. *See* District of Columbia Public Postsecondary Education Reorganization Act, Pub.L. 93–471, § 201, 88 Stat. 1423, 1424 (1974).

4. In the division opinion adopted by the majority it is argued that WASA's statutory authorization to enter into contracts with the District of Columbia "is inconsistent with the notion that WASA is indistinguishable from the District" because "an entity does not contract with itself." *Dingwall*, 766 A.2d at 977. However, in *Simmons*, on which the division relied in part for holding that *sui juris* entities are not entitled to pre-suit notice, the District of Columbia Armory Board was held to be a "body within the District of Columbia" because it was not *sui juris*, despite the fact that at the time it too had the statutory authority to contract with the District. *See* D.C.Code § 2–324(a)(2) (1994); *Simmons*, 656 A.2d at 1156 n. 1 (noting that "such contracts are really agreements between intra-governmental entities.").

For the foregoing reasons, I would hold that lawsuits against WASA must comply with the pre-suit notification requirements of D.C.Code § 12–309.