**DISTRICT OF COLUMBIA WATER
AND SEWER AUTHORITY,
appellant,**

v.

**DELON HAMPTON & ASSOCIATES,
et al., Appellees.**

No. 02–CV–1212.

District of Columbia Court of Appeals.

Argued Dec. 2, 2003.
Decided May 27, 2004.

Frederick A. Douglas, with whom Thomas D. Bridenbaugh, Washington, DC and Nicole C. Mason, were on the brief, for appellant.

Robert B. Wallace, with whom Byron J. Mitchell, Washington, DC, were on the brief, for appellee Delon Hampton & Associates.

O. Kevin Vincent, with whom Thomas B. Carr, Washington, DC, and Christopher T. Stidvent, were on the brief, for appellee Metcalf & Eddy, Inc.

Before TERRY and STEADMAN, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

The District of Columbia Water and Sewer Authority (WASA) appeals an order of the Superior Court of the District of Columbia dismissing, pursuant to Super. Ct. Civ. R. 12(b)(6), WASA's complaint for failure to state a claim upon which relief could be granted. We affirm.

## I.

This case arises out of a dispute relating to a construction project at the Blue Plains Wastewater Treatment Plant involving the construction of piping and mechanical equipment, eight concrete basins and three sedimentation galleries. In January 1987, the District of Columbia, through the Department of Public Works, Water and Sewer Utility Administration ("WASUA"), entered into a contract with Delon Hamp-

ton & Associates ("DHA") in which DHA agreed to provide the District with professional engineering and consulting services related to the design and preparation of the construction project discussed above.

Subsequently, the District of Columbia, and later its successor entity WASA, claimed that the contractor and its various subcontractors had caused delays and other problems that caused a monetary loss. The complaint was filed November 5, 2001.

In defense of the claims raised against them, DHA asserted, *inter alia*, that all of the claims were time barred under D.C.Code § 12–301 (2001) because they were brought more than three years (in fact at least eight years) after the causes of action accrued. D.C.Code § 12–301 provides the various time limitations applicable to causes of action commenced in the District of Columbia, including a three-year limit for damages in the circumstances presented here. It also provides that the time limitations do not apply to "actions brought by the District of Columbia government." D.C.Code § 12–301. The trial court, basing its decision on our holding in *Dingwall v. District of Columbia Water & Sewer Auth.*, 800 A.2d 686 (D.C.2002) (en banc), ruled that the statute of limitations exemption accorded to the District of Columbia government by § 12–301 did not apply to WASA.

In *Dingwall*, we considered the question whether D.C.Code § 12–309 applies when suits are brought against WASA. D.C.Code § 12–309 provides that an action may not be maintained against the District of Columbia unless notice is given within six months after the injury or damage was sustained.[1] We concluded that WASA was not included within § 12–309, holding that WASA is an entity distinct from the District of Columbia. This decision adopted, in part, the division opinion in *Dingwall v. District of Columbia Water & Sewer Auth.*, 766 A.2d 974 (D.C.2001), where we observed:

WASA was established in 1996 "as an independent authority of the District government." D.C.Code § 43–1672 (1998). It is "a corporate body, created to effectuate certain public purposes, that has a separate legal existence within the District government." *Id.* WASA is "*sui juris*"; *i.e.*, it has the power "to sue or be sued" in its own name. D.C.Code § 43–1673(1). WASA is also authorized by law to enter into contracts with, *inter alia*, "*the District*, the United States, Maryland, or Virginia, or their political subdivisions." D.C.Code § 43–1673(10) (emphasis added). WASA's authority to enter into a contract with the District is inconsistent with the notion that WASA is indistinguishable from the District; an entity does not contract with itself.

*Id.* at 977.[2]

## II.

WASA argues that it should receive the protection from the statute of limitations because § 12–301 uses the term "District

---

1. D.C.Code § 12–309 provides in relevant part:

   An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six month after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approxi-

   mate time, place, cause, and circumstances of the injury or damage....

2. WASA was established by the District of Columbia Council. *See* D.C.Code § 43–1672 (1981) (recodified at § 34–2202.02 (2001)). Shortly after it was established, Congress enacted legislation authorizing WASA to issue revenue bonds for wastewater treatment plants.

of Columbia government" while *Dingwall* only construed § 12–309, which uses the term "District of Columbia." It maintains that the differences in terminology are significant and controlling with WASA being included within the former term but not the latter. DHA argues, however, that because the *Dingwall* court held that WASA was not included within the term "District of Columbia" in § 12–309, the same result should follow with respect to § 12–301. Thus the exemption from the statute of limitations accorded to the District of Columbia government would not be available to WASA.

■ It is not apparent from the face of the statute whether "District of Columbia" and "the District of Columbia government" have the same meaning or whether WASA is included within the latter. The two terms appear throughout the Code with no indication whether they are interchangeable, or whether they have different meanings in different contexts. Because there is ambiguity created by the use of different terms in different parts of the statute, we will examine, as we ordinarily do, other sources including the legislative history. *Jackson v. United States,* 819 A.2d 963, 965 (D.C.2003).

Sections 12–301 and 12–309 (and the entire § 12–300 series) were codified into positive law by Congress on December 23, 1963. *See* P.L. No. 88–241, 77 Stat. 510–11 (1963). While the original language of § 12–309 survives to this date, the statute of limitations exemption for the "District of Columbia government" in § 12–301 was not part of the original statute.[3] The § 12–300 series deals generally with the time limitations applicable to civil actions brought in the District of Columbia. For example, § 12–309 deals with the timing for pre-suit notice that is required for suits against the District of Columbia. On the other hand, the original version of § 12–301 contained eight different subsections which set out the specific limitations periods for various types of suits and actions, ranging from one to fifteen years. It did not include, however, any provision exempting the District of Columbia government from the application of those time limits.

While the original enactment of § 12–301 did not contain such a provision, the exemption of certain government entities entirely from a generally applicable statute of limitation would have been consistent with the common law doctrine of *"nullum tempus occurit regi"* ("no time runs against the sovereign"), which applies to suits brought by sovereign entities when they are suing to enforce public rights. *See District of Columbia v. Owens–Corning Fiberglas Corp.,* 572 A.2d 394, 401 (D.C.1989) (*"Owens–Corning"*). The prevailing modern view in the United States is that a state government is entitled to the *nullum tempus* exemption as a matter of common law.[4] The District of Columbia, however, is not, nor has it ever been considered, a state of the United States. Indeed, in 1889 the Supreme Court squarely held that because the District was not a state, it was not entitled to the protection of *nullum tempus. Metropolitan Railroad Co. v. District of Columbia,* 132 U.S. 1, 10 S.Ct. 19, 33 L.Ed. 231 (1889).

What was then thought (although erroneously, as we discuss, *infra*) to be the inapplicability of *nullum tempus* to the District was cited in the 1980's to bar the

---

3. As discussed *infra,* the exemption provision in § 12–301 at issue here was added in 1986 by D.C. Law 6–202.

4. For a comprehensive discussion of both the prevailing and contrary authority on this point, see *Owens–Corning, supra,* 572 A.2d at 404 nn. 20 & 21.

District from pursuing asbestos cases brought on behalf of the public.[5] In response, the Council of the District of Columbia enacted the "District of Columbia Statute of Limitations Amendment Act of 1986," which became effective February 28, 1987. In presenting the draft bill to the Council for consideration the Mayor attached an extensive analysis of common-law background and stated that a purpose of the draft bill was to "make clear that the limitations provisions of § 12–301 and § 12–310 [6] of the D.C.Code do not apply to the District government *when it sues to enforce public rights.*" COUNCIL OF THE DISTRICT OF COLUMBIA, LETTER FROM MAYOR MARION BARRY, JR., ON THE "DISTRICT OF COLUMBIA STATUTE OF LIMITATIONS AMENDMENT ACT OF 1986" (July 16, 1986) (emphasis added). Likewise, in the Report of the Committee on the Judiciary, the statement for "Background and Need" also recited the common-law background and stated that the proposed law "would expressly make the statute of limitations provisions inapplicable to suits filed by the District of Columbia *when a public right is asserted.*" COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, REPORT ON BILL 6–510, THE "DISTRICT OF COLUMBIA STATUTE OF LIMITATIONS AMENDMENT ACT OF 1986" (Nov. 19, 1986) (hereinafter "Council Report") at 2 (emphasis added). The comments of the acting Corporation Counsel added that the proposed bill "would greatly increase the ability of the District to protect *public rights* in the courts." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, COMMENTS OF JAMES MURRAY, ACTING CORPORATION COUNSEL, ON BILL 6–510, THE "DISTRICT OF COLUMBIA STATUTE OF LIMITATIONS AMENDMENT ACT OF 1986" (OCT. 15, 1986) (emphasis added). Furthermore, the statement on "impact on existing laws" stated that the proposed amendment would "expand the current statute of limitations by adding a new provision that the District government shall be immune from the prescribed statute of limitations if a *public right is asserted.*" Council Report at 4 (emphasis added).[7]

■ Our reading of the legislative history as recited above leads us to conclude that an underlying aim of the Council was to ensure that the District received, at the least, the benefit of the common law principle of *"nullum tempus,"* which applies to the sovereign that enforces public rights. That principle was and is consistent with the prevailing view in the state courts. Therefore, in deciding what juridical entities the Council intended to encompass within the phrase "District of Columbia government," we think it now useful to determine whether this action brought by WASA was brought to enforce a public right.

5. While it does not appear that there are any reported cases on this point, the statement for "Background and Need" of D.C. Law 6–202 states:

> By example, the District has been barred from pursuing some cases involving asbestos related injuries because the claim was not presented prior to the running of the statute of limitation.... This legislation will allow the District to litigate public rights beyond the statute of limitations when injury results from asbestos.

6. D.C.Code § 12–310 contains a provision for a ten-year statute of repose in the District. The "District of Columbia Statute of Limitations Amendment Act of 1986" also amended the statute of repose and made the ten-year limit inapplicable in suits brought by the District of Columbia.

7. The "Purpose and Effect" section of the Committee Report, echoing the precise language of the amendments, said simply: "The purpose of bill 6–510 is to amend sections 12–301 and 12–310 of the District of Columbia Code to make those statutes of limitations inapplicable to the District government." Council Report at 2.

### III.

■ In amending § 12–301, the Council also provided that the statute of limitations exemption for the District would apply retroactively to all cases pending in the trial court on July 1, 1986. A challenge to that provision was raised in *Owens–Corning,* one of the cases pending on that date, which had been filed in 1984 and later dismissed on statute of limitations grounds. Although we declined to decide the retroactivity issue, we did hold that *nullum tempus* applied when the District brought an action to enforce a public right; however, *nullum tempus* did not apply when the District brought an action related only to a proprietary interest.[8] "The inherent limitation of this doctrine, of course, is that the rights protected must be of a public nature, and not merely the private or proprietary interests of particular institutions." *Owens–Corning,* 572 A.2d at 401. This "governmental function versus proprietary function" distinction is consistent with the common law and the law in many states. We now examine whether this action involved a public or proprietary interest.

As we said in *Owens–Corning,* "The line between rights that accrue to the public's benefit and those that are ultimately proprietary to the government is a fine one, especially since any financial loss to the government is ultimately a loss to the public fisc." 572 A.2d at 407. In the instant case, we consider the question of whether a municipal waterworks conducts a governmental, or instead, a proprietary function when it sues a private contractor for monetary losses that occurred due to the alleged breach of the arm's length contract and the negligent performance thereof.[9]

The issue of governmental functions versus proprietary functions in the context of municipal waterworks in the District of Columbia has been previously considered in several Circuit Court cases binding on this court.[10] Two cases held that the District had no immunity from the consequences of negligent operation of the sewer system. *See Booth v. District of Columbia,* 100 U.S.App.D.C. 32, 241 F.2d 437 (1956); *Koontz v. District of Columbia,* 24 App.D.C. 59 (1904). In short, operation of the sewer system was a proprietary not governmental function.

In a later case involving claimed negligence relating to the installation of water mains "the issue plainly then [was] whether a water department, so-called, is legally

---

8. In *Owens–Corning,* we held that because of the Self–Government Act of 1973, D.C.Code §§ 1–201 *et seq.* ("The Home Rule Act"), *Metropolitan Railroad Co.* was no longer applicable to the District of Columbia; therefore, the statute of limitations does not apply when the District is "suing in its municipal capacity to vindicate public rights." 572 A.2d at 397.

9. In the contract in question, DHA agreed to provide the District with professional engineering and consulting services for the design and preparation of contract drawings and specifications for the construction project. DHA then entered into a subcontract with Metcalf & Eddy, Inc. ("MEI") whereby MEI agreed to provide expertise in piping design. The District subsequently hired A.S. McGaughan Company ("ASM") as the prime construction contractor to implement the plans furnished by DHA and MEI. ASM later filed a claim seeking delay and impact damages. The District settled ASM's claim, and then WASA (as successor entity) brought the instant case whereby it asserted that the delay and impact damages claimed by the prime construction contractor were the result of design deficiencies on the part of DHA and MEI.

10. *See M.A.P. v. Ryan,* 285 A.2d 310, 311 (D.C.1971) (cases decided before February 1, 1971, by the United States Court of Appeals for the District of Columbia Circuit, formerly called the Court of Appeals for the District of Columbia, are binding precedent).

a proprietary or a governmental function in the District of Columbia." *Scull v. District of Columbia,* 102 U.S.App.D.C. 104, 105, 250 F.2d 767, 768 (1957). The court concluded that because supplying water to its citizens was not a governmental (public) function, the District was not immune from suits for tortious acts committed in the course of doing so.

In light of the foregoing authority, which is consistent with the law followed in most states,[11] it is apparent that functions and activities of WASA, a separate corporate body distinct from the District of Columbia,[12] are proprietary in nature and thus beyond the protection of *nullum tempus*.[13] The precise issue before us is whether WASA, as a distinctly independent agency established to engage in proprietary activities, is to be included within the meaning of the "District of Columbia government" as used in § 12–301. In light of the foregoing consideration, we conclude and hold that the phrase "District of Columbia government" in § 12–301 does not encompass the separate juridical entity of which WASA consists.

## IV.

WASA also contends that the Superior Court abused its discretion by not referring Counts III and IV to the Contract Appeals Board under the doctrine of primary jurisdiction, and that the claim should be governed by the twelve-year statute of limitations applicable to sealed instruments.[14]

### A.

The complaint included four counts— Count I (breach of contract on the contract with DHA); Count II (breach of contract on the contract with MEI); Count III (breach of a contract between DHA and MEI); Count IV (professional negligence by both DHA and MEI). DHA and MEI filed motions to dismiss pursuant to Super Ct. Civ. R.12 (b)(6) contending that Counts I and II should be referred administratively pursuant to a contract provision requiring administrative adjudication of claims. Count III and IV were challenged on different grounds. WASA filed an opposition; however, the court granted the motion to dismiss as to Counts I and II on the ground that WASA had failed to exhaust

11. For a listing of jurisdictions that adhere to the traditional common law version of *nullum tempus*, see *Oklahoma City Mun. Improvement Auth. v. HTB, Inc.,* 769 P.2d 131, 142 n. 26 (Okla.1988).

12. The distinct and markedly independent nature of WASA as a corporate entity was explored and expounded at length in our *Dingwall* opinion, a portion of which is excerpted in this opinion in the text at note 2, *supra.*

13. The enabling statute of WASA, while referring to its creation to effectuate certain public purposes, states that, notwithstanding any other provisions of the statute, WASA's general purpose is to "plan, design, construct, operate, maintain, regulate, finance, repair, modernize, and improve water distribution and sewage collection, treatment, and disposal systems and services, and to encourage

conservation." D.C.Code § 34–2202.02 (2001).

14. WASA argues that, in any event, the original claim was vested in the District of Columbia, and that upon its creation WASA succeeded to the rights of the District of Columbia, including the exemption from the operations of the statute of limitations. We think this claim runs contrary to the exemption provision itself, which expressly applies to the *entity* bringing the action, not to the nature of the action itself. This feature distinguishes the state cases on which WASA relies, in which a federal statute of limitations related to and was "incidental to the instrument assigned, rather than merely a right personal to the assignor only." *National Loan Investors Ltd. Pshp. v. Heritage Square Assocs.,* 54 Conn.App. 67, 733 A.2d 876, 881 (1999).

the administrative remedies provided for in the contracts.[15] That ruling has not been challenged in this appeal. Later the trial court granted the motion to dismiss as to Counts III and IV on statute of limitations grounds, and WASA appealed.

WASA now contends that the trial court abused discretion in not referring the remaining counts for an administrative adjudication under the doctrine of primary jurisdiction. We reject that claim for several reasons. First, that contention was not presented to the trial court and matters not raised in the trial court will not be considered on appeal. *Duke v. American University,* 675 A.2d 26, 28 (D.C.1996). WASA contends, however, that we ruled in *District of Columbia v. Verizon South, Inc.,* 806 A.2d 216 (D.C.2002), that this claim may be presented for the first time on appeal. We disagree. *Verizon South* did not address that issue.

Additionally, we are not persuaded by WASA's argument that this action lies within the jurisdiction of a specialized tribunal as opposed to a court of general jurisdiction. The doctrine of primary jurisdiction is rooted in teaching that "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies ... should not be passed over." *American Ass'n of Cruise Passengers v. Cunard Line,* 308 U.S.App. D.C. 177, 179, 31 F.3d 1184, 1186 (1994), quoting *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952). WASA, however, has not demonstrated either that the claims are not within the conventional wisdom of judges or that they required the exercise of administrative discretion. To the contrary, with respect to Counts III and IV of the complaint, the CAB by its own position would have declined the authority to provide an administrative remedy.[16] "[W]here no administrative remedy exists, the doctrine of primary jurisdiction does not apply." *Rohr Indus. Inc. v. Washington Metro. Area Transit Auth.,* 232 U.S.App.D.C. 92, 96, 720 F.2d 1319, 1323 (1983).

### B.

Finally, WASA contends that this claim should be governed by the "sealed instruments" twelve year statute of limitations as provided in D.C.Code § 12–301(6). The issue of whether a complaint fails to state a claim because it was time-barred is to be decided by the trial court, and, in making this determination the court can consider the complaint and any documents attached to or incorporated in the complaint. *Pisciotta v. Shearson Lehman Bros.* 629 A.2d 520, 525, 526 n. 10 (D.C.1993); *E.E.O.C. v. St. Francis Xavier Parochial Sch.,* 326 U.S.App.D.C. 67, 70 n. 3, 117 F.3d 621, 625 n. 3 (1997). Here, the trial court had before it the contract between the District of Columbia (predecessor to WASA) and DHA.[17] While the word

---

**15.** Although the dispute resolution provisions were slightly different in the two contracts, both required that any claim must first be presented to the contracting officer with ultimate authority with the CAB.

**16.** The CAB adopted a "no-privity rule" and noted that it was a "well-established principle of government contract law." *George A. Bass Construction Co.,* CAB No. D–869, June 10, 1991. This principle forecloses pursuing

Count III, a third-party beneficiary claim, in the CAB. In the same case the CAB also said that "any action based on negligence lies not before the Board but in the Superior Court." *Id.* Accordingly, the CAB would not have jurisdiction over Count IV, a claim for professional negligence.

**17.** In Count III WASA sued as a third party beneficiary of the contract between DHA and MEI. WASA does not claim that the DHA/

seal appears on the signature page, no seal was placed anywhere on the contract, there were no seals on the critical signature page, and the signatures were not notarized. Moreover, the word "seal" does not appear next to any signatures. We have said that "[c]ourts have been reluctant to declare a document to be sealed in the absence of evidence that the parties intended it to be under seal." *Huntley v. Bortolussi,* 667 A.2d 1362, 1365 (D.C.1995). In light of this strict standard, we conclude that the trial court did not err in finding that the operative document was not signed under seal.

Accordingly, the order of the Superior Court finding that WASA's complaint is dismissed is

*Affirmed.*

MEI contract is itself sealed. Rather, it claims here that because the District of Columbia/ DHA contract is sealed then so is the DHA/ MEI contract because the latter incorporates the former. As we observed in the text, the trial court could properly conclude that the District of Columbia/ DHA contract is not sealed. But even if that contract was sealed, WASA has cited no authority for its contention that the DHA/ MEI contract became a sealed instrument because it incorporated a contract that was sealed.