*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CV-311

B. FRANK JOY, L.L.C., APPELLANT,

V.

DISTRICT OF COLUMBIA
SEWER AND WATER AUTHORITY, APPELLEE,

Appeal from the Superior Court
of the District of Columbia
(CAB-3717-16)

(Hon. Michael L. Rankin, Trial Judge)

(Argued March 5, 2019                              Decided August 1, 2019)

*Tara A. Taylor* for appellant.

*Creighton R. Magid* for appellee.

Before THOMPSON and EASTERLY, *Associate Judges*, and WASHINGTON, *Senior Judge*.

WASHINGTON, *Senior Judge*:  This case stems from the collapse of a portion of the roadway at the intersection of 14th and F Streets, N.W., which damaged a sewer main and other underground utilities beneath the intersection.  After repairing the damage, appellee District of Columbia Water and Sewer Authority ("D.C. Water") filed this action against appellant B. Frank Joy, L.L.C. ("BF Joy"),

alleging that BF Joy's negligent construction of a precast manhole in the intersection caused the roadway's collapse. The trial court denied BF Joy's motion to dismiss the action as barred by the District of Columbia's ten-year statute of repose, and a jury found BF Joy liable after a three-day trial. This appeal followed.

After careful review, we conclude that appellee's action was barred by the District of Columbia's statute of repose.[1] Accordingly, we vacate the trial court's judgment and reverse the denial of appellant's motion to dismiss.

## I.     Factual Background

On May 21, 2013, a portion of the roadway at the intersection of 14th and F Streets, N.W. collapsed, revealing an extensive void. Essentially, the soil beneath the roadway had eroded away, leaving an underground cavern where there was once solid earth, and forming a sinkhole. When the roadway collapsed, concrete fell through the void and damaged a fifty-four-inch-diameter sewer pipe and other sewer and water infrastructure buried deep underground. D.C. Water was

---

[1] Because we reach this conclusion, we need not consider appellant's alternative arguments that the trial court erred by (1) instructing the jury that it could find appellant liable on a theory of negligence per se, and (2) prohibiting appellant from introducing evidence that D.C. Water had knowledge of the soil erosion prior to the roadway's collapse.

responsible for repairing the water and sewer infrastructure, remediating the void, and repairing the intersection. The parties stipulated that D.C. Water incurred a total of $916,538.43 in damages as a result.

On May 20, 2016, D.C. Water filed a complaint against BF Joy alleging that

> [t]he void and the resulting cave in w[ere] the result of erosion caused by a manhole installed by BF Joy in or about 1996. BF Joy negligently installed the manhole such that it bisected a storm water lateral, causing storm water to be blocked from the sewer system and to be redirected into the soil, ultimately causing the soil to erode, resulting in the void.

The complaint sought damages for this asserted negligence.

At trial, D.C. Water explained that rainwater and surface runoff are collected in a "catch basin" installed near the curb and gutter in the northwest corner of the intersection. The water collected in this catch basin is supposed to be transported via a fifteen-inch-diameter pipe known as a "catch-basin connector" to a D.C. Water manhole in the center of the intersection. Then, the water is supposed to flow through the D.C. Water manhole to the sewer, which transports it out to D.C. Water's treatment facility.

It was also explained at trial that, in 1996, BF Joy installed a separate four-foot-tall and four-foot-wide "precast manhole" in the middle of the intersection to allow Teleport Communications Group ("TCG"), a subsidiary of AT&T, to access telecommunications cables buried under the roadway.

D.C. Water's theory as to the development of the sinkhole in 2013 was that seventeen years earlier, in 1996, BF Joy had negligently installed this "precast manhole" directly through the fifteen-inch-diameter "catch-basin connector" that was supposed to transport the water from the catch basin to the D.C. Water manhole (leading, eventually, to the sewer). The water was thus diverted and — through a complicated process that was more pronounced during periods of high rainfall — began moving through the ground with enough pressure to force the soil through a crack in the fifty-four-inch sewer pipe at the bottom of the intersection. D.C. Water's expert testified that, if the catch-basin connector was not bisected by the precast manhole, there would not have been enough pressure to force the soil through the sewer pipe. But because of the precast manhole's installation through the middle of the catch-basin connector, the soil, over time, was eroded and transported out of the area via the sewer pipe, creating the void, and leading to the roadway's eventual collapse.

## II.    Procedural Background

BF Joy filed a motion to dismiss the complaint on the basis that, *inter alia*, it was barred by the District of Columbia's statute of repose, D.C. Code § 12-310 (2012 Repl.).  The statute of repose, in relevant part, bars any action to recover damages for injury to real property resulting from "the defective or unsafe condition" of "an improvement to real property" unless the alleged injury "occurs within the ten-year period beginning on the date the improvement was substantially completed[.]"  D.C. Code § 12-310(a)(1).  However, this limitation does not apply to "any action brought by the District of Columbia government."  *Id.* § 12-310(b)(4).[2]

---

[2]  D.C. Code § 12-310 provides that:

> (a)(1) Except as provided in subsection (b), any action --
>    (A) to recover damages for --
>       (i) personal injury,
>       (ii) injury to real or personal property, or
>       (iii) wrongful death,
>
> resulting from the defective or unsafe condition of an improvement to real property, and
>
>    (B) for contribution or indemnity which is brought as a result of such injury or death,
>
> shall be barred unless in the case where injury is the basis of such action, such injury occurs within the ten-year

(continued…)

In its opposition to the motion to dismiss, D.C. Water argued that the statute of repose was inapplicable for three reasons: (1) the action did not arise from "an improvement to real property," (2) the alleged injury did not result from a "defective or unsafe" condition of the manhole but, rather, from the manhole's misplacement, and (3) the action, filed by D.C. Water, was "brought by the District of Columbia government."

The trial court (Judge Michael L. Rankin) initially denied the motion on the basis that it was not clear from the pleadings that the manhole was "an improvement to real property." At trial, BF Joy attempted to cure this deficiency

_____

(…continued)

> period beginning on the date the improvement was substantially completed, or in the case where death is the basis of such action, either such death or the injury resulting in such death occurs within such ten-year period.
>
> . . . .
>
> (b) The limitation of actions prescribed in subsection (a) shall not apply to --
>
> . . . .
>
>> (4) any action brought by the District of Columbia government.

through its cross-examination of Bobby Carmichael, the crew leader operator in charge of the 1996 installation of the precast manhole. Mr. Carmichael testified that there are two "closures" containing spliced fiber optic cables in the precast manhole, that these fiber optic cables are part of the larger AT&T telecommunications network, and that they connect to surrounding buildings, including the nearby Treasury building. Mr. Carmichael further testified that he was employed by AT&T at the time of the roadway collapse, and was sent to "protect" the fiber optic cables located in the manhole because the precast manhole contained "very important fiber that could have been damaged from the sinkhole."

BF Joy renewed its motion to dismiss based on Mr. Carmichael's testimony. The trial court again denied the motion, reasoning that the statute of repose does not apply "when someone is digging underground to put some cable in," because a hole dug to install underground cables does not constitute "an improvement to real property." The jury subsequently found BF Joy liable for the damages incurred by D.C. Water. BF Joy timely appealed.

## III. Analysis

The District of Columbia statute of repose bars any action to recover damages for injury to real property "resulting from the defective or unsafe condition of an improvement to real property" unless the alleged injury "occurs within the ten-year period beginning on the date the improvement was substantially completed[.]" D.C. Code § 12-310(a)(1). This statute "differs from an ordinary statute of limitations in that the specified time period begins to run not from the date on which a right of action accrues, but from . . . the date the improvement to real property was completed." *J.H. Westerman Co. v. Fireman's Fund Ins. Co.*, 499 A.2d 116, 119 (D.C. 1985). Congress provided the following explanation for enacting a ten-year statute of repose for a certain subset of actions:

> Architects who design buildings or improvements to real property, engineers who design and install equipment, or contractors, who build the improvements under rigid inspection and conformity with building codes, may find themselves named as defendants in such damage suits 20 years after the improvement was completed and occupied.

> Moreover, architects, engineers, and contractors have no control over an owner whose neglect in maintaining an improvement may cause dangerous or unsafe conditions to develop over a period of years. They cannot prevent an owner from using an improvement for purposes for which it was not designed. Nor can they prevent the owner of a building from making alterations or changes

which may, years afterward, be determined unsafe or defective and appear to be a part of the original improvement. Can it be doubted that to allow actions without regard to a reasonable time limitation imposes a difficult evidentiary burden on design professionals and their progenies? This proposed legislation strikes the balance between the rights of injured parties to seek recovery on the one hand, and the substantial interest of the design professions to have finality to their work on the other.

After a considerable amount of examination of the interests of both design professionals and consumers, we believe that as a matter of sound policy and fairness, a 10-year limit should be established within which actions against design professionals must be brought.

S. Rep. No. 92-1274, at 2 (1972).

In this appeal, we must decide whether D.C. Water's negligence action was barred by the statute of repose. This turns on (1) whether the manhole was an "improvement to real property," (2) whether D.C. Water's action sought to recover for damages resulting from "a defective or unsafe condition" of the manhole, and (3) whether D.C. Water's action was "brought by the District of Columbia government." These are matters of statutory interpretation, which we review *de novo*. *See Porter v. United States*, 769 A.2d 143, 148 (D.C. 2001).

A.    **Improvement to Real Property**

The trial court correctly noted that "[t]here is a dearth of precedent in the District of Columbia defining an improvement to real property under the statute of repose." In determining what constitutes "an improvement to real property," courts in other jurisdictions "have employed two basic approaches. One applies common law fixture analysis. The other most frequently used avoids the vagaries of fixture law and adopts a commonsense interpretation of the phrase. The commonsense approach commences with an examination of the common usage of language." *Allentown Plaza v. Suburban Propane Gas Corp.*, 405 A.2d 326, 331 (Md. Ct. Spec. App. 1979) (internal quotation marks and citations omitted); *see also* Gearld W. Heller, *The District of Columbia's Architects' and Builders' Statute of Repose: Its Application and Need for Amendment*, 34 Cath. U. L. Rev. 919, 932-33 (1985). "The overwhelming majority of courts . . . have eschewed fixture analysis and its vagaries by employing a common sense or common usage test." *Rose v. Fox Pool Corp.*, 643 A.2d 906, 918 (Md. 1994) (internal quotation marks omitted).

Although we have never formally chosen a methodological approach, we have cited with approval 41 Am. Jur. 2d *Improvements* § 1 (1968), which discusses

"a commonsense analysis of what constitutes an improvement to real property." *See Westerman*, 499 A.2d at 119. We now join the "overwhelming majority of courts," *Rose*, 643 A.2d at 918, in applying the commonsense definition of "improvement" to the District of Columbia statute of repose. We agree with the Court of Appeals of Maryland that, in its common usage, an "improvement" is

> [a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. . . .

*Id.* (quoting Black's Law Dictionary (6th ed. 1990)).

D.C. Water contends that the precast manhole was not an "improvement" under this definition because it "was not intended to, and did not, enhance the beauty or utility of the intersection of 14th Street and F Street, NW; [it] was merely a permissive use of the public space to access cables that traversed the public space." D.C. Water emphasizes that while the precast manhole and underlying telecommunications cable system may have benefitted AT&T, they "conferred no benefit on the intersection," and so cannot be deemed to be improvements to the intersection.

In making this argument, D.C. Water relies on *Atlanta Gas Light Co. v. City of Atlanta*, 287 S.E.2d 229 (Ga. Ct. App. 1981), where Georgia's intermediate appellate court held that an action against a gas company and contractor that installed an underground gas line was not barred by Georgia's statute of repose. The court reasoned that "the installation of an underground gas line by a utility company for the transmission of natural gas, where the ownership of the line continues in the company, is not such an improvement to real estate as was contemplated by the statute" because "the 'improvement' is more appropriately considered an extension of the utility's distribution system than an improvement to property owned by the plaintiff." *Id.* at 222-23 (citing *Turner v. Marable-Pirkle, Inc.*, 233 S.E.2d 773, 775 (Ga. 1977)).

However, there is reason to question *Atlanta Gas Light Co.* and the *Turner* case on which it relies. Georgia courts have interpreted these decisions quite narrowly. *See Mullis v. S. Co. Servs., Inc.*, 296 S.E.2d 579 (Ga. 1982) (holding that a claim that a power plant's electrical distribution system was negligently designed was barred by Georgia's statute of repose over the dissent's argument that the claim was not barred under *Turner*); *Ashton Atlanta Residential, LLC v. Ajibola*, 770 S.E.2d 311, 312-13 (Ga. Ct. App. 2015) (distinguishing *Atlanta Gas*

*Light Co.* and holding that a claim against a developer for the negligent construction of water lines was barred by Georgia's statute of repose); *Feldman v. Arcadis US, Inc.*, 728 S.E.2d 792, 794 & n.8 (Ga. Ct. App. 2012) (distinguishing *Atlanta Gas Light Co.* and *Turner* and holding that a claim against a construction company for negligent planning and design of a section of a roadway on which an automobile accident occurred was barred by Georgia's statute of repose).

And other courts have expressly disagreed with these decisions. For example, in *Ebert v. S. Jersey Gas Co.*, 723 A.2d 599 (N.J. 1999), the Supreme Court of New Jersey was faced with the issue of "whether a service line leading from a gas main on residential property is an improvement" within the meaning of New Jersey's statute of repose. The trial court had relied on *Washington v. City of Elizabeth*, 585 A.2d 431 (N.J. Super. Ct. 1990), to find that the statute of repose did not bar the action. The intermediate appellate court reversed, and the Supreme Court affirmed, explaining that:

> In *Washington*, a pedestrian fell into a pothole created when New Jersey Bell Telephone Company excavated the street to install underground telephone lines. The telephone company moved for summary judgment, arguing that the excavation occurred beyond the ten-year period of limitation of [the New Jersey statute of repose]. In denying the company's motion, the [trial court] reasoned that an underground telephone line is a mere "conduit," but not an improvement. Observing that

> telephone services are delivered to the adjacent houses, not to the street, the court concluded that the underground lines did not constitute an improvement to the street.
>
> The *Washington* opinion is both distinguishable and flawed. . . . A telephone line in the bed of a municipal street may not improve the value of the street, but does improve the value of adjacent property. Similarly, a gas main in a street adds value to adjacent properties. The flaw in the *Washington* opinion is the failure to recognize that an underground utility line can be both an extension of a utility distribution system and an improvement to the property it serves. To the extent that *Washington* holds otherwise, we overrule it.

*Id.* at 601.

The court concluded that "[a] gas line, although it serves as a conduit, also is a valuable improvement," and found that "[this] analysis comports with that of other jurisdictions," citing *Atlanta Gas Light Co.* as an outlier holding to the contrary. *Id.* at 601.

Further, we note that, to satisfy the definition of "improvement" provided above, it is not necessary for an item to "enhance [the property's] value, beauty or utility"; an item can also be an improvement if it "adapt[s] [the property] for new or further purposes." *See Rose*, 643 A.2d at 918 (quoting Black's Law Dictionary (6th ed. 1990)). In *Pippin v. Reilly Indus., Inc.*, 64 F. App'x 382, 383 (4th Cir.

2003), the United States Court of Appeals for the Fourth Circuit was called upon to decide whether a negligence action against the designer and manufacturer of a utility pole that fell onto a passing truck was barred by Maryland's twenty-year statute of repose, Md. Code Ann., Courts and Jud. Proceedings § 5-108(a) (1991). The court stated that "if, when installed, the pole had been used to provide electricity to the property on which it was located," it "would clearly 'enhance the utility' of the property," and so would fall within the commonsense definition of improvement. *Id.* at 387 (alterations adopted). However, *Pippin* was "complicated by the fact that the pole was *not* used to provide electricity to the land on which it was located until . . . less than 20 years before [the truck] accident." *Id.* Nonetheless, the court concluded that the fact that the utility pole serviced a different parcel of property than the parcel on which it was installed did not prevent it from being an improvement, reasoning that:

> If, for this reason, the pole cannot be regarded as "enhancing the utility" of the property on which it was located for the requisite twenty years, we believe it nonetheless constituted an improvement to that property under another portion of the Black's definition. That is, from the time the pole was installed (and therefore more than twenty years), it constituted an addition to the property on which it was installed that was "intended to adapt it for new or further purposes."

*Id.* (alterations adopted; citation omitted).

We find these cases persuasive, and conclude that the precast manhole installed by BF Joy was an "improvement to real property," under the commonsense definition of that term. The precast manhole was a "valuable addition" to the intersection because it allowed AT&T to access "very important" fiber optic cables that provided telecommunications services to surrounding buildings, including the nearby Treasury building. Whether or not providing access to these cables "enhance[d] [the] value, beauty or utility" of the intersection, it clearly "adapt[ed]" the intersection "for [a] new or further purpose[]." And the precast manhole was a "permanent structure," the installation of which "amount[ed] to more than mere repairs or replacement."

We find nothing in the text, legislative history, or purpose of the District of Columbia statute of repose indicating that Congress intended to exempt the architects, engineers, and contractors who design and install permanent telecommunications infrastructure on public roadways from the protections the statute of repose otherwise provides. The design and installation of the precast manhole was subject to government oversight and approval. *See* S. Rep. No. 92-1274, at 2 (1972) (stating that one reason for enacting the statute of repose was that improvements to real property are designed and constructed "under rigid inspection and conformity with building codes"). BF Joy had "no control" over

the subsequent maintenance of the intersection or any "alterations or changes" to it. *Id.* And BF Joy had the same "substantial interest" in the finality of its work that architects, engineers, and contractors generally have after building a permanent structure. *Id.*

For these reasons, we conclude that the precast manhole constructed by BF Joy was an "improvement to real property" as that term is used in the District of Columbia statute of repose.

**B.     Defective or Unsafe Condition**

Next, D.C. Water contends that its lawsuit did not seek to recover damages "resulting from [a] defective or unsafe condition" of the precast manhole, D.C. Code § 12-310(a)(1)(A), but, rather, sought to recover damages resulting from the non-defective manhole's placement through the middle of the catch basin connector. We find no merit in this argument. We think it plain that, if a four-foot-tall and four-foot-wide precast manhole is installed through the middle of a fifteen-inch-diameter catch basin connector, the precast manhole is in an "unsafe condition" within the meaning of the District of Columbia's statute of repose.

## C.    Brought by the District of Columbia Government

Finally, D.C. Water contends that this lawsuit falls within the exception to the statute of repose for "any action brought by the District of Columbia government," D.C. Code § 12-310(b)(4), because it was brought by D.C. Water.[3] Our prior precedent resolves this issue. In *District of Columbia Water & Sewer Auth. v. Delon Hampton & Assocs.*, 851 A.2d 410 (D.C. 2004), we determined that actions brought by D.C. Water are not "actions brought by the District of Columbia government" for purposes the statute-of-limitations exception contained in D.C. Code § 12-301 (2012 Repl.).[4] The exception contained in D.C. Code § 12-310(b)(4) uses the same language as the exception contained in D.C. Code § 12-301, and the two provisions share a common legislative history. *Id.* at 413-14.

---

[3] D.C. Water is a legislatively created "independent authority of the District government" that "has a separate legal existence within the District government." D.C. Code § 34-2202.02(a) (2012 Repl.) ("There is established, as an independent authority of the District government, the District of Columbia Water and Sewer Authority. The Authority shall be a corporate body, created to effectuate certain public purposes, that has a separate legal existence within the District government.").

[4] D.C. Code § 301 provides the limitations periods for different types of actions, but states that "[t]his section does not apply to . . . actions brought by the District of Columbia government."

D.C. Water attempts to avoid the application of *Delon Hampton* by reading that decision as limited to actions brought in connection with D.C. Water's proprietary functions, and arguing that "[n]o 'proprietary functions' are involved here." However, this argument misconstrues our decision in *Delon Hampton*.

In *Delon Hampton*, we interpreted the exception for actions "brought by the District of Columbia government" against the backdrop of the "common law doctrine of *'nullum tempus occurit regi'* ('no time runs against the sovereign')." *Id.* at 413. That doctrine generally "applies to suits brought by sovereign entities when they are suing to enforce public rights," *id.* (citing *District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 401 (D.C. 1989)), but had been held not to apply to the District of Columbia because the District of Columbia is not a state, *id.* (citing *Metropolitan Railroad Co. v. District of Columbia*, 132 U.S. 1 (1889)). After reviewing the legislative history of the statute-of-limitations and statute-of-repose exceptions for actions "brought by the District of Columbia government," we concluded that

> an underlying aim of the Council was to ensure that the District received, at the least, the benefit of the common law principle of "nullum tempus," which applies to the sovereign that enforces public rights. That principle was and is consistent with the prevailing view in the state courts. Therefore, *in deciding what juridical entities the Council intended to encompass within the phrase*

> *"District of Columbia government,"* we think it now useful to determine whether this action brought by [D.C. Water] was brought to enforce a public right.

*Delon Hampton*, 851 A.2d at 414 (emphasis added).

Based on binding authority holding that "operation of the sewer system was a proprietary not governmental function," and that "because supplying water to its citizens was not a governmental (public) function, the District was not immune from suits for tortious acts committed in the course of doing so," *id.* at 415-16 (citations omitted), we found it "apparent that functions and activities of [D.C. Water], a separate corporate body distinct from the District of Columbia, are proprietary in nature and thus beyond the protection of *nullum tempus*." *Id.* at 416. We stated our conclusion as follows:

> The precise issue before us is whether [D.C. Water], as a distinctly independent agency established to engage in proprietary activities, is to be included within the meaning of the "District of Columbia government" as used in § 12-301. In light of the foregoing consideration, *we conclude and hold that the phrase "District of Columbia government" in § 12-301 does not encompass the separate juridical entity of which [D.C. Water] consists.*

*Id.* (emphasis added).

Although we found it instructive in *Delon Hampton* to consider whether D.C. Water was established to engage in proprietary or governmental activities, our holding that "the phrase 'District of Columbia government' in § 12-301 does not encompass the separate juridical entity of which [D.C. Water] consists," *id.*, was categorical. We did not suggest that that D.C. Water might sometimes be part of "the District of Columbia government" and sometimes not, or mandate a separate analysis of whether D.C. Water was engaged in a public or proprietary activity to determine whether D.C. Water was part of "the District of Columbia government" under the facts of a given case. Instead, we conclusively determined that the separate juridical entity of D.C. Water was not part of "the District of Columbia government" under D.C. Code § 12-301. We see no reason to reach a different conclusion here.

## IV.  Conclusion

For the foregoing reasons, we conclude that D.C. Water's negligence action sought to recover damages for injury to real or personal property "resulting from the defective or unsafe condition of an improvement to real property" after "the ten-year period beginning on the date the improvement was substantially completed" had expired. D.C. Code § 12-310(a)(1). Because the action was not

"brought by the District of Columbia government," *id.* § 12-310(b)(4), it was barred by the District of Columbia's statute of repose. Accordingly, we vacate the trial court's judgment and reverse the denial of appellant's motion to dismiss.

*So ordered.*